NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON HEWITT, INC. : | Hon. Dennis M. Cavanaugh |
| Plaintiff, : | **OPINION** |
| v. : | Civil No. 10-cv-5108 (DMC)(JAD) |
| H.E.A.T., LLC, ARAKEL HAGOPIAN : | |
| Defendants : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Jackson Hewitt, Inc.'s ("Plaintiff") application for a preliminary injunction pursuant to Fed. R. Civ. Pro 65 against Defendants HEAT, LLC. and Mr. Arakel Hagopian. Pursuant to Fed. R. Civ. Pro 78, no oral argument was heard. After reviewing the submissions of the parties, and based on the following, Plaintiff's application for a preliminary injunction is **granted.**

I. **BACKGROUND**

Defendant HEAT Enterprises is a Texas Limited Liability Corporation. HEAT entered into seven franchise agreements with Plaintiff to operate Jackson Hewitt income tax preparation businesses. These franchise agreements gave Defendant the right to operate tax return businesses using Plaintiff's trade names, trademarks and service marks, logos, as well as Plaintiff's proprietary business methods and software. Arakel Hagopian was the owner of HEAT, and as such, provided Plaintiff with personal guarantees of Heat's obligations under the seven franchise


agreements.

On December 6, 2010 Jackson Hewitt commenced the instant cause of action by way of an Order to Show Cause, seeking a preliminary injunction compelling Defendants HEAT and Hagopian, amongst others, to adhere to their post-termination obligations pursuant to the parties' franchise agreements. The injunctive relief sought by Jackson Hewitt falls generally into four categories: (1) removal of Jackson Hewitt signage from HEAT offices, (2) transfer of all Jackson Hewitt telephone numbers owned by HEAT to Jackson Hewitt, and notification by Defendants to the telephone company that Defendants no longer have the right to use such telephone numbers, (3) adherence to the two year non-compete provision of the franchise agreement, and (4) return to Jackson Hewitt of all client files. In light of Jackson Hewitt's application, this Court instructed all the parties in the underlying action, including HEAT and Mr. Hagopian, to appear before U.S. Magistrate Judge Joseph A. Dickson in the hope that this matter could be resolved. Defendant HEAT failed to appear at any of the conferences scheduled by Judge Dickson. On December 16, 2010 the briefing schedule was amended to allow the other Defendants in the underlying action to file their responsive briefs on or before December 27, 2010. Defendant HEAT, however, was instructed that their brief remained due on December 17, 2010. To date, HEAT has failed to appear or file any responsive papers that would allow the Court to consider Plaintiff's motion for injunctive relief as opposed.

## II.  DISCUSSION

Because Defendant has failed to answer or respond, it is assumed, based on Plaintiff's verified complaint, that the following matters are undisputed. All seven franchise agreements

3

were terminated. Pursuant to the terms of the franchise agreement, HEAT had certain post-termination obligations. Such obligations are set forth in Section 20.3 of the franchise agreements. *(See* Exhibit 1 to Verified Compl.).

Pursuant to Section 20.3(c) of the Franchise Agreement, Defendant was obligated to return to Jackson Hewitt, "without retaining any copies, the originals and all copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3, and to provide Jackson Hewitt with access "to remove all copies of any such items" from HEAT's offices and hard drive, and "to delete them from any other computer data storage media." Section 12.3, in turn, identifies "trade secret, confidential and proprietary materials" as the identities of the customers served by HEAT (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers. Pursuant to Section 12.3.2, Defendants acknowledged that "the unauthorized use or disclosure" of such "trade secrets, confidential and proprietary information will cause irreparable injury" and that "damages are not an adequate remedy."

Pursuant to Section 20.3(h) of the Franchise Agreement, Defendants were obligated to comply with certain post-termination covenants found in Section 18 therein. Section 18 of the Franchise Agreement, in turn, provides that "for a period of two (2) years after the earlier of (1) the effective date of termination for any reason, or (2) expiration of this Agreement, or (3) the date of the sale of the Franchised Business or a majority of its assets, neither you nor any of your owners may directly or indirectly prepare or electronically file individual income tax returns,

4

teach tax courses, offer Financial Products or own, engage in, operate, manage, purchase, invest in ... franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business ... within the Territory or within an area ten (10) miles outside the boundaries of the Territory."

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir.2004).

Having considered the arguments raised in support of the instant application, and there being no opposition, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on the merits as to its breach of contract claim.[1]

It is undisputed that the Franchise Agreement directs Defendant to: (a) remove all Jackson Hewitt signage from HEAT properties,[2] and (b) return to Jackson Hewitt all client files (that is, all documents bearing the identities of the customers served by HEAT, tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on

---

[1] Since this Court presently exercises its diversity jurisdiction over Plaintiff's Verified Complaint, the law to be applied is that of the forum state-New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir.1995).

[2] *See* Section 20.3(d); 20.3(g).

5

behalf of customers).[3] HEAT has breached Sections 20.3(c) and 12.3.1 of the franchise agreement by failing to return his client files to Jackson Hewitt. Similarly, it is averred that HEAT breached Sections 20.3(d) and 20.3(g) by failing to remove all Jackson Hewitt signage from its offices. Because HEAT does not dispute that breach of such provisions has caused Jackson Hewitt to suffer damages, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on its breach of contract claim

The Court likewise finds that Jackson Hewitt has met its burden of demonstrating irreparable harm that will result if restraints are not imposed at this time. Where a party is in possession of another party's confidential information and is poised to use or disclose such information, there is a likelihood of irreparable harm. *See, e.g., Nat'l Starch and Chem. Corp. v. Parker Chem. Corp.*, 219 N.J.Super. 158, 162 (App.Div.1987) ("Lauria knew trade secrets of National, and ... under the circumstances there was sufficient likelihood of 'inevitable disclosure,' with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.") (internal citations omitted); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 Fed. Appx. 727, 732 (3d Cir.2009) (noting that "disclosure of confidential information or trade secrets may constitute irreparable harm") (citing *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir.1992)). This type of irreparable harm flows both from Defendants' failure to return all client files and from Defendants' potential use-or inevitable disclosure-of information contained therein. That such circumstances may constitute irreparable harm is not only recognized by New Jersey law, but was expressly

---

[3] *See* Section 20.3(c); 12.3.1.

recognized by both parties in agreeing to the terms of the Franchise Agreement.[4] Thus, Jackson Hewitt has succeeded in demonstrating the existence of immediate irreparable harm.

As to the remaining two factors-the balancing of hardships and the public interest-the Court finds that any hardship to Defendants in requiring them to adhere to the terms of the Franchise Agreement is *de minimis* given that such terms were expressly accepted by the Defendant, whereas the hardship faced by Jackson Hewitt should the Defendant be permitted to retain the client files and potentially utilize such information in competing against Jackson Hewitt is significant. Finally, there is no doubt that the public has an interest in upholding freely negotiated and reasonable business contracts. As such, the Court determines that the public interest is best served by holding Defendants to the terms of the Franchise Agreement.

### III. CONCLUSION

For the reasons contained herein, Plaintiff's application for a preliminary injunction is **granted**. An appropriate order follows this opinion.

1-5-11

Dennis M. Cavanaugh, U.S.D.J.

---

[4] *See* Section 12.3.2 of Franchise Agreement ("You acknowledge that the unauthorized use or disclosure of our trade secrets, confidential and proprietary information will cause irreparable injury and that damages are not an adequate remedy.").