1

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| _____ : | **Hon. Dennis M. Cavanaugh** |
| JACKSON HEWITT, INC. : | |
| Plaintiff, : | **OPINION** |
| v. : | Civil No. 10-cv-05108 (DMC)(JAD) |
| DJSG UTAH TAX SERVICE, LLC, : | |
| SHEILA AND DONALD GODBEHERE, | |
| NATIONAL TAX NETWORK and | |
| KATHRYN L. WARD | |
| : | |
| Defendants | |
| _____ : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Jackson Hewitt, Inc.'s ("Plaintiff") application for a preliminary injunction pursuant to Fed. R. Civ. Pro 65 enjoining Defendants DJSG Utah Tax Service, LLC, Donald and Sheila Godbehere, National Tax Network, LLC and Kathryn L. Ward, and Defendants' cross-motions to dismiss the complaint pursuant to Fed. R. Civ P. 4, Fed. R. Civ. P.12(b)(2) and Rule 12(b)(3), or in the alternative, to transfer venue to Arizona pursuant to  28 U.S.C.A. § 1404(a) and 28 U.S.C.A. § 1391(a).  Pursuant to Fed. R. Civ. Pro 78, no oral argument was heard. After reviewing the submissions of the parties, and based on the following, Plaintiff's application for a preliminary injunction is **granted** and Defendant's cross-motion is **denied.**

I.        **BACKGROUND**

 Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business

located in Parsippany, New Jersey. Defendant National Tax is an Arizona limited liability

corporation with its principal place of business in Arizona. National tax is wholly owned by

WSA Financial Services, LLC ("WSA"), a former Jackson Hewitt franchisee.. Defendant Ward

owns WSA, and is the guarantor of National Tax's obligations under each of the franchise

agreements between National Tax and Plaintiff. Defendant DJSG Utah Tax Service is an Arizona

limited liability corporation with its principal place of business in Utah. Defendants Sheila and

Donald Godbehere were co-guarantors of the franchise agreement between Jackson Hewitt and

DJSG Utah Tax Service. The franchise agreements entered into between Jackson Hewitt and all

Defendants gave Defendants the right to operate tax return businesses using Plaintiff's trade

names, trademarks and service marks, logos, as well as Plaintiff's proprietary business methods

and software.

        On December 6, 2010 Jackson Hewitt commenced the instant cause of action by way of

an Order to Show Cause, seeking a preliminary injunction compelling these Defendants amongst

others, to adhere to their post-termination obligations pursuant to the parties' franchise

agreements. The injunctive relief sought by Jackson Hewitt falls generally into four categories:

(1) removal of Jackson Hewitt signage from National Tax offices, (2) transfer of all Jackson

Hewitt telephone numbers owned by Defendants to Jackson Hewitt, and notification by

Defendants to the telephone company that Defendants no longer have the right to use such

telephone numbers, (3) adherence to the two year non-compete provision of the franchise

agreements, and (4) return to Jackson Hewitt of all client files. In light of Jackson Hewitt's

application, this Court instructed all the parties in the underlying action to appear before U.S.

Magistrate Judge Joseph A. Dickson in the hope that this matter could be resolved. Judge

Dickson extended the briefing schedule to allow Defendants more time to prepare their

responses. All Defendants subject to this Opinion were instructed to file their responses with the

Court on or before December 27, 2010.[1]  Section 28.2 of each of the franchise agreements

contained an express provision whereby each Defendant consented to personal jurisdiction in

"the United States District Court nearest to [Jackson Hewitt's] principal place of business,

(presently the District of New Jersey, Newark Division)."

## II.    LEGAL STANDARD

### A.    Fed. R. Of Civ. P. 4

In matters involving service of process, as well as other matters, Courts are

instructed to use their "judicial experience and common sense." See *Ashcroft v. Iqbal*, 29 S. Ct.

1937, 1950 (U.S. 2009). Moreover, "Rule 4(d)(3) does not require that the delivery of process be

accomplished during a face to face meeting with the person upon whom service is to be effected.

Nor does it require that it be surrounded by medieval formalism." *O'Connor v. Altus,*  67 N.J.

106, 127-128, 335 A.2d 545, 556 (N.J. 1975).

In New Jersey, "it must be shown that the agent had specific authority, express or

implied, for the receipt of service of process." *See Local 617, Intern. Broth. of Teamsters,*

*Chauffeurs, Warehousemen and Helpers of America v. Hudson Bergen Trucking Co.* 182

N.J.Super. 16, 20, 440 A.2d 18, 20 (N.J.Super.A.D., 1981) Moreover, Sections 1097 and 1101 of

---

[1]Although the Court has chosen to examine the merits, and decide accordingly, it must be
noted that Defendant's responsive papers were not received by the Court until January 3, 2011.

*Wright and Miller, Federal Practice and Procedure: Civil* state that "the cases dealing with agency by appointment indicate that an actual appointment for the specific purpose of receiving process normally is expected."

A. <u>Rules 12(b)(2)</u> and 12(b)(3)

Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. Rule 12(b)(3) state in relevant part that "a party may assert the following defenses by motion: (2) lack of personal jurisdiction, [and] (3) improper venue.

As the Third Circuit held in *Carteret Sav. Bank, F.A. v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.1992), "in responding to a motion to dismiss on jurisdictional grounds, the plaintiff need only plead a prima facie case to survive the initial motion to dismiss. Moreover, "it is 'black letter law' in the Third Circuit that 'a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed.'" *Bond v. Laser Spine Institute, LLC* 2010 WL 3212480, 11 (E.D.Pa.) (E.D.Pa.,2010), citing *Shutte,v. Armco Steel Corp*. 431 F.2d 22, 25 (C.A.Pa. 1970). Moreover, where the plaintiff files suit in his home forum, as the case is here, "that choice is entitled to considerable deference." *Ignati v. Columbia Props. Harrisburg LLC,* 2010 WL 2471671, at \*2 (E.D.Pa. June 15, 2010)

"Once challenged, a plaintiff bears the burden of establishing personal jurisdiction." *Pro Sports Inc. v. West,* 639 F.Supp.2d 475, 478 (D.N.J.2009) ( *citing General Elec. Co. v. Deutz AG,* 270 F.3d 144, 150 (3d Cir.2001) (finding the plaintiff must demonstrate "[a] nexus between defendant, the forum, and the litigation.")). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Krishanthi v. Rajarantnam,* No. 09-5395(DMC), 2010 WL 3429529 (D.N.J. Aug,.

26, 2010) (citations omitted) (quoting *Ameripay, LLC v. Ameripay Payroll, Ltd.,* 334 F.Supp.2d

629, 633 (D.N.J.2004)). "However, when the court does not hold an evidentiary hearing on the

motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and

the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its

favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004); *See also Carteret Say.*

*Bank, FA v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.1992). "If the contents of the plaintiff's

complaint conflict with the defendant's affidavits, the district court must construe all reasonable

inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, *Federal*

*Practice and Procedure:* Civil 3d § 1067.6 (3d ed.2002).

   " Pursuant to Federal Rule of Civil Procedure 4(e), federal 'district courts have

personal jurisdiction over non-resident defendants to the extent authorized under the law of the

forum state in which the district court sits.' " *Rothstein v. Harstad,* No. 10-1421(WHW), 2010

WL 3259789, *1 (D.N.J. Aug.17, 2010) (quoting *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,*

5 F.3d 28, 31 (3d Cir.1993)). "New Jersey's long-arm statute provides for jurisdiction coextensive

with the due process requirements of the United States Constitution." *Miller Yacht Sales,* 384

F.3d at 96 (citing N.J. Court Rule 4:4-4(c)); *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102

N.J. 460, 508 A.2d1127(1986)). "[T]he due process analysis focuses on the non-resident

defendant's 'minimum contacts' with the forum." *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d

324, 334 (3d Cir.2009) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85

L.Ed.2d 528 (1985)).However, when a state exercises personal jurisdiction over a defendant in a

suit that arises out of the defendant's contact with that state, it is said to be exercising specific

jurisdiction. *Id* . at 414 n.8, 104 S.Ct. at 1872 n.8, 80 *L. Ed.*2d at 411 n.8. In such a case, the

minimum contacts inquiry focuses upon "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 *U.S.* 770, 775, 104 *S.Ct.* 1473, 1478, 79 *L. Ed.*2d 790, 798 (1984) (quoting *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2580, 53 *L. Ed.*2d 683, 698 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 323 (1989) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 297-98, 100 *S.Ct.* 559, 567-68, 62 *L. Ed.*2d 490, 501-02 (1980)). "The question is whether 'the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.' " *Lebel, supra,* 115 *N.J.* at 324 (quoting *World-Wide Volkswagen, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L. Ed.*2d at 501).

      B.    <u>Venue; 28 U.S.C.A. § 1404(a) and 28 U.S.C.A. § 1391(a)</u>

In relevant part, 28 U.S.C.A. § 1404(a) states, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it may have been brought."  Pursuant to 28 U.S.C.A. § 1391(a), for civil actions based on diversity of citizenship, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. "

The Third Circuit has stated that in any transfer request the plaintiff's choice of

forum is a "paramount consideration," and its choice should not be lightly disturbed. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). When a plaintiff chooses his home forum, traditionally the choice has been "entitled to greater deference," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981), at least when it coincides with a district in which a substantial part of the events or omissions giving rise to the claim occurred. The plaintiff's choice of forum is not, however, dispositive. *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1306 (D.N.J.,1990). Moreover, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." *Ricoh Co., Ltd. v. Honeywell Inc.,* 817 F.Supp. 473, 481 (D.N.J.1993). *See also National Micrographics Systems v. Canon U.S.A.,* 825 F.Supp. 671, 681 (D.N.J.1993).

 "The burden of showing the need for transfer rests with the movants." *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Also, "although the district court has wide discretion in transferring a case, transfers should not be liberally granted." *Superior Precast v. Safeco Ins. Co. of Am.,* 71 F.Supp.2d 438, 445 (E.D.Pa.1999).

 C.    Forum Selection Clause

 In *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 1913 the Supreme Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Id.* at 10, 92 S.Ct. at 1913. The Third Circuit cites *Bremen* in holding that "a forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' *id.* at 15, 92 S.Ct. at 1916, *either* that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical

8

purposes be deprived of his day in court,' *id.* at 18, 92 S.Ct. at 1917, *or* that the clause was procured through 'fraud or overreaching,'" *id.* at 15, 92 S.Ct. at 1916." *See Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1219 (C.A.3 (Pa.),1991)

**III.**       **DISCUSSION**

        The old saying that "two wrongs don't make one right" is apropos to the matter before the Court. Although Defendants allege all sorts of bad faith and misbehavior on the part of Plaintiff, none of those allegations justify the way in which Defendants have violated their post-termination obligations under the franchise agreements that they entered into. Moreover, the fact that each of those agreements contained an express provision that conferred personal jurisdiction over Defendants, and selected the District Court of New Jersey as the forum in which disputes arising out of those agreements would be adjudicated, is prima facie evidence, as required in our Circuit, that this Court has personal jurisdiction over all Defendants.[2] Defendants' arguments that they have not done business in New Jersey is unavailing in light of the contractual selection of New Jersey as the proper forum.

        As to Defendant National Tax Network's allegation that they were not properly served, the Court finds that section 28.4 of the franchise agreement specifically names Defendant Ward as the appointed agent of service for National Tax Network. By serving Defendant Ward, therefore, Plaintiff effectuated service in this action. Defendants motion to transfer venue, based solely on the inferrence that it would be more convenient for Defendants, is similarly unavailing both in light of the contractual forum selection clause designating New Jersey, and the well-settled

---

        [2]Section 28.2 of the franchise agreement states "you consent to venue and personal jurisdiction in all litigation brought by us or our affiliates against you...[in] the United States District Court nearest to our principal place of business."

case law that Plaintiff's choice of forum is owed great deference, and that Courts ought not easily or routinely transfer venue.

Pursuant to Section 20.3(c) of the Franchise Agreement, Defendants were obligated to return to Jackson Hewitt, "without retaining any copies, the originals and all copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3, and to provide Jackson Hewitt with access "to remove all copies of any such items" from their offices and hard drives, and "to delete them from any other computer data storage media." Section 12.3, in turn, identifies "trade secret, confidential and proprietary materials" as the identities of the customers served by Defendants (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers. Pursuant to Section 12.3.2, Defendants acknowledged that "the unauthorized use or disclosure" of such "trade secrets, confidential and proprietary information will cause irreparable injury" and that "damages are not an adequate remedy."

Pursuant to Section 20.3(h) of the Franchise Agreement, Defendants were obligated to comply with certain post-termination covenants found in Section 18 therein. Section 18 of the Franchise Agreement, in turn, provides that "for a period of two (2) years after the earlier of (1) the effective date of termination for any reason, or (2) expiration of this Agreement, or (3) the date of the sale of the Franchised Business or a majority of its assets, neither you nor any of your owners may directly or indirectly prepare or electronically file individual income tax returns, teach tax courses, offer Financial Products or own, engage in, operate, manage, purchase, invest in ...

franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business ... within the Territory or within an area ten (10) miles outside the boundaries of the Territory."

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief ." *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir.2004).

Having considered the arguments raised in support of the instant application, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on the merits as to its breach of contract claim.[3]

It is undisputed that the Franchise Agreement directs Defendant to: (a) remove all Jackson Hewitt signage from [Defendants'] properties,[4] and (b) return to Jackson Hewitt all client files (that is, all documents bearing the identities of the customers served by [Defendants], tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers).[5] Defendants have breached Sections 20.3(c) and 12.3.1 of the

---

[3]Since this Court presently exercises its diversity jurisdiction over Plaintiff's Verified Complaint, the law to be applied is that of the forum state-New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health Co.,* 54 F.3d 177, 180 (3d Cir.1995).

[4]*See* Section 20.3(d); 20.3(g).

[5]*See* Section 20.3(c); 12.3.1.

franchise agreement by failing to return his client files to Jackson Hewitt. Similarly, it is averred that Defendants may have  breached Sections 20.3(d) and 20.3(g) by failing to remove all Jackson Hewitt signage from its offices. Because Defendants do not dispute that breach of such provisions has caused Jackson Hewitt to suffer damages, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on its breach of contract claim

The Court likewise finds that Jackson Hewitt has met its burden of demonstrating irreparable harm that will result if restraints are not imposed at this time. Where a party is in possession of another party's confidential information and is poised to use or disclose such information, there is a likelihood of irreparable harm. *See, e.g., Nat'l Starch and Chem. Corp. v. Parker Chem. Corp.,* 219 N.J.Super. 158, 162 (App.Div.1987) ("Lauria knew trade secrets of National, and ... under the circumstances there was sufficient likelihood of 'inevitable disclosure,' with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.") (internal citations omitted); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 Fed. Appx. 727, 732 (3d Cir.2009) (noting that "disclosure of confidential information or trade secrets may constitute irreparable harm") (citing *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92 (3d Cir.1992)). This type of irreparable harm flows both from Defendants' failure to return all client files and from Defendants' potential use-or inevitable disclosure-of information contained therein. That such circumstances may constitute irreparable harm is not only recognized by New Jersey law, but was expressly recognized by both parties in agreeing to the terms of the Franchise Agreement.[6] Thus, Jackson Hewitt has succeeded in

---

[6]*See* Section 12.3.2 of Franchise Agreement ("You acknowledge that the unauthorized use or disclosure of our trade secrets, confidential and proprietary information will cause irreparable injury and that damages are not an adequate remedy.").

12

demonstrating the existence of immediate irreparable harm.

As to the remaining two factors-the balancing of hardships and the public interest-the Court finds that any hardship to Defendants in requiring them to adhere to the terms of the Franchise Agreement is *de minimis* given that such terms were expressly accepted by Defendants, whereas the hardship faced by Jackson Hewitt should Defendants be permitted to retain the client files and potentially utilize such information in competing against Jackson Hewitt is significant. Finally, there is no doubt that the public has an interest in upholding freely negotiated and reasonable business contracts. As such, the Court determines that the public interest is best served by holding Defendants to the terms of the Franchise Agreement.

### III.   CONCLUSION

For the reasons contained herein, Plaintiff's application for a preliminary injunction is **granted**. An appropriate order follows this opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:           January   10 , 2011
Original:       Clerk
cc:             All Counsel of Record
                Hon. Joseph A. Dickson, U.S.M.J.
                File