1

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| —————————————————— : | **Hon. Dennis M. Cavanaugh** |
| JACKSON HEWITT, INC. : | |
| Plaintiff, : | **OPINION** |
| v. : | Civil No. 10-cv-05108 (DMC)(JAD) |
| RICHARD BARNES and BARNES : ENTERPRISES, et al. | |
| Defendants : | |
| —————————————————— : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Jackson Hewitt, Inc.'s ("Plaintiff") application

for a preliminary injunction pursuant to Fed. R. Civ. Pro 65 enjoining Richard Barnes and Barnes

Enterprises *et al* ("Defendants") from activities in violation of the post-termination obligations

imposed by the franchise agreements between the parties.  Pursuant to Fed. R. Civ. Pro 78, no

oral argument was heard. After reviewing the submissions of the parties, and based on the

following, Plaintiff's application for a preliminary injunction is **granted** in full.

### I.      BACKGROUND

Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business

located in Parsippany, New Jersey. Defendant Barnes Enterprises is a South Carolina corporation

with its principal place of business in South Carolina. Defendant Richard Barnes owns 100% of

Barnes enterprises, and is the guarantor of Barnes Enterprises' obligations under each of the eight

franchise agreements between the parties. The franchise agreements entered into between Jackson Hewitt and  Defendants gave Defendants the right to operate tax return businesses using Plaintiff's trade names, trademarks and service marks, logos, as well as Plaintiff's proprietary business methods and software.

On December 6, 2010 Jackson Hewitt commenced the instant cause of action by way of an Order to Show Cause, seeking a preliminary injunction compelling these Defendants, amongst others, to adhere to their post-termination obligations pursuant to the parties' franchise agreements. The injunctive relief sought by Jackson Hewitt falls generally into four categories: (1) removal of Jackson Hewitt signage from Defendant's offices, (2) transfer of all Jackson Hewitt telephone numbers owned by Defendants to Jackson Hewitt, and notification by Defendants to the telephone company that Defendants no longer have the right to use such telephone numbers, (3) adherence to the two year non-compete provision of the franchise agreements, and (4) return to Jackson Hewitt of all client files. In light of Jackson Hewitt's application, this Court instructed all the parties in the underlying action to appear before U.S. Magistrate Judge Joseph A. Dickson in the hope that this matter could be resolved. Judge Dickson extended the briefing schedule to allow Defendants more time to prepare their responses.

This Court's jurisdiction stems from section 28.2 of each of the franchise agreements which contained an express provision whereby each Defendant consented to personal jurisdiction in "the United States District Court nearest to [Jackson Hewitt's] principal place of business, (presently the District of New Jersey, Newark Division)." Although the parties were able to agree in principal on Jackson Hewitt's entitlement to injunctive relief, they were unable to agree on the

scope of that relief. Defendant avers that Jackson Hewitt's proposed order is overly broad because it seeks to enjoin not only Defendant Barnes, but also his "employees, agents, independent contractors, and all those who act in concert or participation with them." Defendant avers that it is impermissible for Jackson Hewitt to enjoin third parties who were not signatories to any of the terminated franchise agreements. Jackson Hewitt maintains that Defendant is attempting to circumvent his post-termination obligations, and that his father, Mr. Scott Barnes, plans to operate from fifteen identical locations of the former Jackson Hewitt franchises a competing tax preparation business known as "Customers First," and that Defendant Barnes is himself directly involved. Plaintiff further avers that phone numbers that were part of the franchise agreement, and subject to the post-termination obligations, are impermissibly being used by the new, competing business run by Scott Barnes.

## II.   <u>LEGAL STANDARD</u>

A party seeking a preliminary injunction must show: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief ." *Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir.2004). Although injunctions are an extraordinary measure, and not ordinarily applicable to third parties, the New Jersey Superior Court's Appellate Division held in *Horizon Health Center v. Felicissimo* 317 N.J.Super. 521, 525-526, 722 A.2d 611, 613  (N.J.Super.A.D.,1999) that "injunctions of this nature are generally broad enough to encompass non-parties, who are bound provided they have actual notice of its substance and contents. The reason is to avoid nullification of a decree by unnamed aiders and abettors who carry out the prohibited acts." <u>See</u>

*Regal Knitwear Co. v. NLRB,* 324 *U.S.* 9, 14, 65 *S.Ct.* 478, 481, 89 *L.Ed.* 661, 666 (1945);

*Planned Parenthood Ass'n of Cincinnati, Inc. v. Project Jericho,* 52 *Ohio St.*3d 56, 556 *N.E.*2d

157, 163 (Ohio 1990). Moreover, in a case with somewhat analogous facts, the Court held that

"the injunction was proper against Chernomzav, because Fishkin could not circumvent the

restriction by directing an agent to do what he himself was prohibited from doing." <u>See</u> *Fishkin v.*

*Susquehanna Partners, G.P.* 2010 WL 547509, 6 (E.D.Pa.) (E.D.Pa.,2010).

  In another case dealing with the discrete issue of telephone numbers, as presented in the

instant case, the Court in the Eastern District of Pennsylvania held,  *Marblelife, Inc. v. Stone*

*Resources, Inc.* 2010 WL 5257815, 9 (E.D.Pa.) (E.D.Pa.,2010),  that "District courts within this

circuit have reasoned that where a former franchisee continues to use telephone numbers it used

as franchisee and agreed to relinquish or transfer upon termination, the franchisee is not only in

breach of the franchise contract but also poses a serious threat of irreparable injury. *See Cottman*

*Transmission Sys., Inc. v. Melody,* 851 F.Supp. 660, 669 (E.D.Pa.1994).

### III. <u>DISCUSSION</u>

  The Court recognizes that, at this early stage of the litigation, there is a question of fact as

to what Scott Barnes, father of Defendant Richard Barnes, is doing, and what role he plays in the

operation of "Citizen's First" tax preparation, and whether his involvement may be an attempt to

circumvent the post-termination obligations of Defendant. Nonetheless, in the Court's analysis of

whether to issue a preliminary injunction, and against whom, the analysis focuses on the factors

as previously mentioned, namely "(1) a likelihood of success on the merits; (2) that it will suffer

irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in

even greater harm to the nonmoving party; and (4) that the public interest favors such relief ." To the extent that the Court finds that Plaintiff has met its burden under that standard, the Court finds that it is reasonable to enjoin Defendants, as well as their "affiliates, shareholders, partners, members or other parties who have a direct or indirect legal or beneficial interest in" from the prohibited activities. Moreover, the Court finds that to be effective, an injunction must comply with the terms of the franchise agreement, and Defendant may not pick and choose the obligations that pose a hardship, such as removing signage, de-listing phone numbers and turning over client records. The obligations imposed by the franchise agreements are not a menu from which Defendant can choose what he desires.

Pursuant to Section 20.3(c) of the Franchise Agreement, Defendants were obligated to return to Jackson Hewitt, "without retaining any copies, the originals and all copies of all trade secret, confidential and proprietary materials as defined in paragraph 12.3, and to provide Jackson Hewitt with access "to remove all copies of any such items" from their offices and hard drives, and "to delete them from any other computer data storage media." Section 12.3, in turn, identifies "trade secret, confidential and proprietary materials" as the identities of the customers served by Defendants (including their names, addresses, phone numbers, social security numbers and financial and tax information), tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to services performed on behalf of customers. Pursuant to Section 12.3.2, Defendants acknowledged that "the unauthorized use or disclosure" of such "trade secrets, confidential and proprietary information will cause irreparable injury" and that "damages are not an adequate remedy."

Pursuant to Section 20.3(h) of the Franchise Agreement, Defendants were obligated to comply with certain post-termination covenants found in Section 18 therein. Section 18 of the Franchise Agreement, in turn, provides that "for a period of two (2) years after the earlier of (1) the effective date of termination for any reason, or (2) expiration of this Agreement, or (3) the date of the sale of the Franchised Business or a majority of its assets, neither you nor any of your owners may directly or indirectly prepare or electronically file individual income tax returns, teach tax courses, offer Financial Products or own, engage in, operate, manage, purchase, invest in ... franchise, lend money to, lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business ... within the Territory or within an area ten (10) miles outside the boundaries of the Territory."

Having considered the arguments raised in support of the instant application, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on the merits as to its breach of contract claim.[1]

It is undisputed that the Franchise Agreement directs Defendant to: (a) remove all Jackson Hewitt signage from [Defendants'] properties,[2] and (b) return to Jackson Hewitt all client files (that is, all documents bearing the identities of the customers served by [Defendants], tax return copies, customer lists, mailing labels, W-2s, 1099s, 8453s, work in progress, all "books" and "archives" program disks, book keeping files and any other documents related to

---

[1]Since this Court presently exercises its diversity jurisdiction over Plaintiff's Verified Complaint, the law to be applied is that of the forum state-New Jersey. *See Am. Cyanamid Co. v. Fermenta Animal Health Co.,* 54 F.3d 177, 180 (3d Cir.1995).

[2]*See* Section 20.3(d); 20.3(g).

services performed on behalf of customers).[3] Defendants have breached Sections 20.3(c) and 12.3.1 of the franchise agreement by failing to return his client files to Jackson Hewitt. Similarly, it is averred that Defendants may have  breached Sections 20.3(d) and 20.3(g) by failing to remove all Jackson Hewitt signage from its offices. Because Defendants do not dispute that breach of such provisions has caused Jackson Hewitt to suffer damages, the Court finds that Jackson Hewitt has met its burden of demonstrating likelihood of success on its breach of contract claim

The Court likewise finds that Jackson Hewitt has met its burden of demonstrating irreparable harm that will result if restraints are not imposed at this time. Where a party is in possession of another party's confidential information and is poised to use or disclose such information, either personally or through an agent such as a parent or close associate, there is a likelihood of irreparable harm. *See, e.g., Nat'l Starch and Chem. Corp. v. Parker Chem. Corp.,* 219 N.J.Super. 158, 162 (App.Div.1987) ("Lauria knew trade secrets of National, and ... under the circumstances there was sufficient likelihood of 'inevitable disclosure,' with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.") (internal citations omitted); *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.,* 306 Fed. Appx. 727, 732 (3d Cir.2009) (noting that "disclosure of confidential information or trade secrets may constitute irreparable harm") (citing *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 92 (3d Cir.1992)). This type of irreparable harm flows both from Defendants' failure to return all client files and from Defendants' potential use-or inevitable disclosure-of information

---

[3]*See* Section 20.3(c); 12.3.1.

8

contained therein. That such circumstances may constitute irreparable harm is not only recognized by New Jersey law, but was expressly recognized by both parties in agreeing to the terms of the Franchise Agreement.[4] Thus, Jackson Hewitt has succeeded in demonstrating the existence of immediate irreparable harm.

As to the remaining two factors-the balancing of hardships and the public interest-the Court finds that any hardship to Defendants in requiring them to adhere to the terms of the Franchise Agreement is *de minimis* given that such terms were expressly accepted by Defendants, whereas the hardship faced by Jackson Hewitt should  Defendants be permitted to retain the client files and potentially utilize such information in competing against Jackson Hewitt is significant. Finally, there is no doubt that the public has an interest in upholding freely negotiated and reasonable business contracts, and in not allowing parties to circumvent those contractual agreements. As such, the Court determines that the public interest is best served by holding Defendants to the terms of the Franchise Agreement.

**III.   <u>CONCLUSION</u>**

For the reasons contained herein, Plaintiff's application for a preliminary injunction is **granted** in its entirety. An appropriate order follows this opinion.

S/ Dennis M. Cavanaugh<br>Dennis M. Cavanaugh, U.S.D.J.

Date:          January  18 , 2011
cc:            All counsel of record
               Hon. Joseph A. Dickson, U.S.M.J.
               File

---

[4]*See* Section 12.3.2 of Franchise Agreement ("You acknowledge that the unauthorized use or disclosure of our trade secrets, confidential and proprietary information will cause irreparable injury and that damages are not an adequate remedy.").