1

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JACKSON HEWITT, INC. | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No.: 2:10-cv-05108 |
| | : | (DMC)(JAD) |
| DJSG   UTAH   TAX   SERVICE,   LLC, | : | |
| SHEILA AND DONALD GODBEHERE, | : | |
| | : | |
| Defendants | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

      This matter comes before the Court upon motion by several of the named Defendants in this

consolidated  matter,  DJSG  Utah  Tax  Service,  Donald  Godbehere  and  Sheila  Godbehere

("Defendants") asking this Court to reconsider its January 10, 2011 Order imposing  temporary

restraints on Defendants pursuant to L. Civ. R. 7.1. Defendants have also filed a motion to request

Certification for Interlocutory Appeal to the Third Circuit pursuant to 28 U.S.C. § 1292(b) with a

corresponding Motion to Stay.  In the alternative, they have filed a Motion to Sever the DJSG claims

pursuant to Fed. R. Civ. P. 21. For the reasons contained herein, the motion for reconsideration is

**denied.** Defendant's motion for Certification for Interlocutory Appeal is also **denied**, as is the

Motion to Stay, and the Court declines to sever the DJSG claims,[1] or allow for an enlargement of time in which to answer.

I.      **BACKGROUND**

Plaintiff Jackson Hewitt is a Virginia corporation with its principal place of business located in Parsippany, New Jersey. Defendant DJSG Utah Tax Service is a limited liability corporation with its principal place of business in Utah. Defendants Sheila and Donald Godbehere were co-guarantors of the franchise agreement between Jackson Hewitt and DJSG Utah Tax Service. The franchise agreements entered into between Jackson Hewitt and Defendants gave Defendants the right to operate 37 tax return businesses in Utah and Arizona using Plaintiff's trade names, trademarks and service marks, logos, as well as Plaintiff's proprietary business methods and software.

On December 6, 2010 Jackson Hewitt commenced action against Defendants by way of an Order to Show Cause, seeking a preliminary injunction compelling these Defendants, amongst others, to adhere to their post-termination obligations pursuant to the parties' franchise agreements. The injunctive relief sought by Jackson Hewitt fell generally into four categories: (1) removal of Jackson Hewitt signage, (2) transfer of all Jackson Hewitt telephone numbers owned by Defendants to Jackson Hewitt, and notification by Defendants to the telephone company that Defendants no longer have the right to use such telephone numbers, (3) adherence to the two year non-compete provision of the franchise agreements, and (4) return to Jackson Hewitt of all client files. The Court

---

[1]It has been brought to the Court's attention, by letter from counsel for DJSG Utah Tax Service LLC (ECF Doc. 121-1, Page ID 4518), that a bankruptcy petition has been filed on behalf of this entity, captioned U.S. Bankruptcy Case No. 2:11-bk-02970-RTB. Pursuant to the U.S. Bankruptcy Code Section 362(a), this invokes the provisions for an automatic stay as to DJSG Utah Tax Service LLC. This Opinion and the accompanying Order are thus modified to stay the proceedings as to DJSG, but NOT as to Sheila and Donald Godbehere.

instructed all the parties in the underlying action to appear before U.S. Magistrate Judge Joseph A. Dickson in the hope that this matter could be resolved. On January 10, 2011 this Court issued an Opinion and Order granting Plaintiff's motion for a preliminary restraining order, and denying Defendants' cross-motion. The instant motions followed thereafter.

II.     STANDARD OF REVIEW

A. Reconsideration

Motions for reconsideration are governed by L. Civ. R. 7.1(i).  See U.S. v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  A motion pursuant to Local Rule 7.1(i) may be granted if (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. Database Am., Inc. v. Bellsouth Adver. & Pub. Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993).  Such relief is "an extraordinary remedy" that is to be granted "very sparingly." See NL Indus. Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996). Local Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the Court before rendering its original decision.  See Bermingham v. Sony Corp. Of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994).  In other words, a motion for reconsideration is not an appeal.  It is improper on a motion for reconsideration to "ask the court to rethink what it ha[s] already thought through." Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990).

B. Certification of Interlocutory Appeal; 28 U.S.C. § 1292(b)

A court may exercise its discretion to grant leave to file an interlocutory appeal under 28 U.S.C. § 1292(b) only if its order: (1) involves a "controlling question of law," (2) offers "substantial ground for difference of opinion" as to its correctness, and (3) if appealed

4

immediately, "materially advance[s] the ultimate termination of the litigation." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974). With respect to the first factor, the Third Circuit has defined a "controlling question of law" to "encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Id.* at 755. All three conditions must be met before a court may certify an order for interlocutory appeal. *Aparicio v. Swan Lake,* 643 F.2d 1109, 1110 n. 2 (5th Cir.1981). Moreover, a court should certify decisions for interlocutory review only in exceptional circumstances. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474-75, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *Milbert v. Bison Labs., Inc.,* 260 F.2d 431, 433 (3d Cir.1958); *AstenJohnson v. Columbia Cas. Co.,* No. 03-CV-1552, 2006 WL 1805979, at *1 (E.D.Pa. June 29, 2006). 28 U.S.C. § 1292(b) provides that a district court may certify an interlocutory order for appeal if it is of the opinion that (1) the order "involves a controlling question of law;" (2) "as to which there is substantial ground for difference of opinion;" and (3) "that an immediate appeal of the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The determination of whether § 1292(b) certification is appropriate under these standards lies within the discretion of the district court. *See, e.g., Ferraro v. Sec'y of U.S. Dep't of Health & Human Servs.,* 780 F.Supp. 978, 979 (E.D.N.Y.1992) (collecting cases and citations).

Interlocutory appeals under Section 1292(b) are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule, and only "exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *see also Flor v. BOT Fin. Corp.,* 79 F.3d 281, 284 (2d Cir.1996)

(per curiam) (collecting cases). Because piecemeal litigation is *600 generally discouraged, the Court of Appeals has repeatedly emphasized that a district court is to "exercise great care in making a § 1292(b) certification." *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.,* 964 F.2d 85, 89 (2d Cir.1992) *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 921 F.2d 21, 25 (2d Cir.1990) ("The power to grant an interlocutory appeal must be strictly limited to the precise conditions stated in the law.") (internal alteration omitted) (quoting *Gottesman v. Gen. Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959)). Section 1292(b) was not intended "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation," *Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 690 F.Supp. 170, 172 (S.D.N.Y.1987) (internal quotation marks omitted), or to be a "vehicle to provide early review of difficult rulings in hard cases." *German v. Fed. Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y.1995); *see also Abortion Rights Mobilization, Inc. v. Regan,* 552 F.Supp. 364, 366 (S.D.N.Y.1982); *McCann v. Communications Design Corp.,* 775 F.Supp. 1506, 1534 (D.Conn.1991). Rather certification is warranted only in "exceptional cases," where early appellate review "might avoid protracted and expensive litigation." *Telectronics,* 690 F.Supp. at 172; *see also In re Buspirone Patent Litigation,* 210 F.R.D. 43, 49 (S.D.N.Y.2002); *German,* 896 F.Supp. at 1398.

C. <u>Severance</u>

"A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.,* No. 02-8382, 2004 WL 835082, at *1 (E.D.Pa. Apr.16, 2004) (citing *Fanning v. Black & Decker, Inc.,* No. 98-6141, 1999 WL 163628, at *1 (E.D.Pa. Mar.18, 1999)). Rule 21 states: "Misjoinder of parties is not a

ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed.R.Civ.P. 21. The court may also sever any claim against a party. Fed.R.Civ.P. 21(a). Notably, "Rule 21 is 'most commonly invoked to sever parties improperly joined under Rule 20.' " *Boyer,* 2004 WL 835082, at 1.

As a threshold matter, joinder is strongly encouraged. *Hagan v. Rogers,* 570 F.3d 146, 152 (3d Cir.2009). However, joinder is only appropriate if both elements of Rule 20(a) are met. *Lopez v. City of Irvington,* No. 05-5323, 2008 WL 565776, at 2 (D.N.J. Feb.28, 2008). Specifically, Rule 20(a) permits the joinder of plaintiffs in a single action if: "(1) the plaintiffs have a right to relief arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) there exists some question of law or fact common to the plaintiffs." *Cumba v. Merck & Co., Inc.,* No. 08-2328, 2009 WL 1351462, at 1 (D.N.J. May 12, 2009); *see also* Fed.R.Civ.P. 20(a). Importantly, "Rule 20(a)'s purpose is to 'promote trial convenience and expedite the final determination of disputes, thereby preventing multiple law suits.' " *Al Daraji v. Monica,* No. 07-1749, 2007 WL 2994608, at *10 (E.D.Pa. Oct.21, 2007) (citation omitted). The rule is designed " 'to promote judicial economy ... [and] reduce inconvenience, delay, and added expense.' " *Id.*

## III.   <u>DISCUSSION</u>

### A. <u>Reconsideration</u>

Defendants direct the Court's attention to the New Jersey Franchise Practices Act ("NJFPA"), a statute which they previously cited in their responsive pleadings, and which is inapplicable on its face to the case at bar, since it only applies to "(a) a franchise (1) the

performance of which contemplates or requires the franchisee to establish or maintain a place of business within the State of New Jersey." (*See* <u>N.J.S.A.</u> 56:10-4). It is difficult to imagine that this fact simply went unnoticed by Defendants or their counsel, especially in light of an analogous decision by this very Court, cited by Plaintiff in their responsive brief, *Bonanno v. Quiznos Master LLC*, 2006 WL 3359673, in which the Court stated "other than stating that New Jersey has expressed concern with the protection of New Jersey franchisees through the enactment of the NJFPA, Plaintiffs have not identified any public policy rationale that sufficiently rebuts the presumption that the forum selection clause should be enforced." (*Id* at 5). This Court expressly held in *Bonanno* that the forum selection clause in a franchise agreement was not contrary to New Jersey public policy, and that the forum selection clause was neither unreasonable nor unconscionable. Here, in a case that is both factually and legally similar, the Court reaches the same conclusion. Defendant Donald Godbehere's affidavit states that "DJSG was not offered the option of an identical franchise agreement without the forum selection clause in the subject agreements," and then concludes that "this should serve to invalidate the already presumptively invalid forum selection clause of the franchise agreements." (Aff. of D. Godbehere, ECF Doc. 48-1, page ID 3,143). Contrary to Defendant's assertion, however, Plaintiff was not obligated to present a smorgasbord of potential fora from which Defendant might choose what he liked. The failure of Plaintiff to do so does not render the agreement unconscionable. It should be noted that in *Bonnano*, this Court enforced the forum selection clause to the extent that the Court rejected Plaintiff's choice of forum, and instead transferred the case to the contractually agreed upon venue, Colorado. The Court made the transfer in spite of the general presumption in favor of Plaintiff's choice of forum. Here, where Plaintiff has brought

8

suit in New Jersey pursuant to a forum selection clause that names New Jersey, the rationale for enforcing the contract as executed by the parties is even more persuasive. Moreover, as if the statutory language were not sufficient, the forum selection clause as written prevents the application of the NJFPA, specifying that "the New Jersey Franchise Practices Act shall not apply to any franchisee whose assigned location is outside the State of New Jersey." (ECF Doc. 41-30, page ID 1,527, Section 28.1 of JH07-07, Franchise Agreement).

As to Defendant's contention that this Court should reconsider its decision to retain jurisdiction, and not transfer venue, Defendants again predicate their argument on the NJFPA, by suggesting that "the Court overlooked certain precedent ." (Def. Motion, page 4).  Once again, Defendant has failed to factor in the Court's holding in *Bonnano*, that "New Jersey public policy is only persuasive authority on this issue because, as stated above, federal law governs the effect given to forum selection clauses in diversity cases." (*Id* at 4, citing *Cadapult Graphic Sys. Inc. V. Tektronix,* 98 F. Supp. 560 (D.N.J. 2000). Even if the Court accepted Defendant's argument about New Jersey public policy, which the Court explicitly declined to do in *Bonnano*, Defendants have exaggerated the importance of what they erroneously label "precedent" for this Court.

The Court is not unmindful of the difficulties that having to defend in New Jersey may pose for out of state Defendants, but those difficulties, left to the Court's imagination since they are largely unspecified by Defendant, are  insufficient for the Court to overturn Plaintiff's decision, endorsed by Defendants in the franchise agreements,  to sue in New Jersey. In addition, since the named Defendants in this motion represent only one piece of a complicated puzzle involving multiple Defendants in multiple states, other concerns argue in favor of the Court's

retaining jurisdiction. Rather than force Plaintiff to litigate all over the country, centralizing the cases here, as the franchise agreements anticipate, conserves judicial resources and promotes efficiency, two legitimate objectives that Courts may well consider. (*See Washington v. FedEx Ground Package System, Inc*. 995 A.2d 1271, 1279 (Pa.Super.,2010), holding that "coordination will ensure judicial efficiency as well-establishing one court to address discovery issues, motions and other pretrial decisions involving the same facts and circumstances.")

Defendant further argues that the Court ought to reconsider the decision to enjoin Defendants from retaining files that Plaintiff contends are covered by Section 12.3.1 of the franchise agreements. Defendant's argument is not now, nor was it previously,  persuasive. First of all, the IRS regulation that Defendant cites states that Electronic Return Originators ("ERO's") must retain material only "until the end of the calendar year at the business address from which it originated." (Defendant's Motion for Reconsideration, ECF Doc. 83, Page ID 3,711). Since the franchise agreements were terminated in August, 2010, the period for which DJSG argues that it was responsible to retain documents for IRS review ended on December 31, 2010, ten days before the temporary injunction was issued by this Court. Moreover, to the extent that certain forms must be available to the IRS for three years rather than merely until the end of the calendar year, transferring the files to Plaintiff also transfers the onus for complying with the regulations. If the Jackson Hewitt franchise agreement were found to be violative of IRS regulations because it specifies that "W-2s, 1099s, 8453s, works in progress, all 'books' and 'archives' program disks, bookeeping files, Financial Products applications and other Financial Products related documents, any other documents related to services performed on behalf of customers, etc." (ECF Doc 41-30, page ID 1518, Sec. 12.3.1 of Franchise Agreement JH07-07) must be returned

to Plaintiff upon termination of the franchise agreement, that is an issue for the IRS to raise with Jackson Hewitt. Defendants have not directed the Court to any regulation, however, that requires that files be maintained in a specific physical location after the end of the calendar year. If those files must be available for IRS inspection, Jackson Hewitt would assume that responsibility. As the Court understands the IRS regulations, there is no contradiction between the terms of the franchise agreements and Defendant's obligations to the IRS. In the absence of such a showing, Defendant's argument, although novel, is unavailing.

As far as the Court can discern from the exhibits that Defendant has attached to their motion, Defendants argument is equally unavailing with respect to the banking agreements cited by Defendants. The agreement with META that Defendants have provided to the Court, for example, states in the "background" section that "this 2010 Bank Product Agreement ("Agreement") is by and between you, a Jackson Hewitt franchisee or Jackson Hewitt company owned store ("you" or "Participant")." (ECF Doc. 82-7, page ID 3634, 2010 Meta JH Product Franchise Agreement). Section 3.8 of the same document states "Participant shall retain with respect to each Customer a paper or electronic copy of the Customer's signed Application(s), together with copies of all the tax returns, W-2s and (to the extent feasible) taxpayer identifications, for a period of five (5) years, and, upon request, shall deliver the same to META within 48 hours." Defendant fails to connect the dots, however, and does not reach the obvious and unavoidable conclusion that this document retention requirement does not apply to terminated franchisees since they are, by definition, no longer "participants" as that term is used in the agreement.

Defendant refers to "other state statutes and standards of professional conduct" that DJSG

and the Godbehere Defendants may be forced to violate if the injunctive order stands. This is unavailing, especially in light of Defendant's assertion that Plaintiff "improperly expands the documents that are subject to governance by the franchise agreements."(Defendant's Brief, page 11).  As previously enumerated, however, the scope of the documents covered by Section 12.3.1 of the franchise agreement has not been exceeded by the injunctive relief granted by the Court in the January 10, 2011 Order. Jackson Hewitt has not, to the best of the Court's knowledge, requested documents outside the scope of that section, nor have Defendants made any specific averments to the contrary. Absent such a showing by Defendants, the Court finds that Plaintiff seeks nothing more, nor less, than that Defendants abide by the terms of the franchise agreement. The injunctive relief that they have sought and received does nothing more than require that the agreement be followed as executed by the parties.

      B. <u>Certification for Interlocutory Appeal</u>

      It is important to remember that this case arises under a franchise agreement, and that at present, all Plaintiffs have sought from this Court is to have the contractual terms of that agreement upheld. The injunctive order that this Court entered required nothing more than that Jackson Hewitt phone lines be disconnected or turned over to Plaintiff's use and control, that customer files as specified in section 12.3.1 of the franchise agreement be returned to Plaintiff, and that Defendants cease any competitive business activities in the protected areas for the protected time period, as clearly stated in the franchise agreement. Simply put, NJFPA is inapplicable. Moreover, even if the Court were willing to entertain their motion to transfer venue on other grounds, Defendant's have offered no affidavits describing the hardship to them of litigation in New Jersey, other than informing the Court that Arizona is 2,500 miles away.

Defendant has not even addressed, much less met, the threshold requirement of demonstrating that there is "substantial ground for difference of opinion" as to the correctness of the Court's decision to retain venue in New Jersey. As in virtually all cases that arise under the Court's diversity jurisdiction, there is no question that one party or the other will need to travel, or to have counsel available in one venue or the other. Without persuasive documentation that the hardship on Defendants would actually deprive them of a fundamental right, the Court must honor Plaintiff's choice, especially when coupled with the unambiguous language of the franchise agreement.

C. Severance

Contrary to Defendant's assertion, Jackson Hewitt has not been handed a "strategic windfall" (ECF Doc. 84-4, Page ID 3753) by the Court's *sua sponte* decision to consolidate the cases in the interests of judicial economy and efficiency. All of the cases arise out of identical franchise agreements, and although there are variations in the facts as to each Defendant, they are largely the same, and the relief sought is identical. The DJSG and Godbehere Defendants assert nothing to demonstrate  the uniqueness of their claims. They are asked to comply with the Court's Order, as are all the Defendants. They have asserted no set of facts that would either prove or suggest that such compliance is particularly problematic for them.

The question of a stay is rendered moot by the Court's decision not to Certify for Interlocutory Appeal. As to Defendant's request for an enlargement of time to answer, Defendants are once again urged to consider the posture of this case, which arose as the result of Plaintiff's contention that emergent relief was required in the form of temporary restraints. To

13

give Defendants more time to avoid compliance with the Court's Order is not only unnecessary, but might prejudice Plaintiff's legitimate interests.

**IV.**     **CONCLUSION**

For the reasons contained herein, Defendants' motion for reconsideration pursuant to L. Civ. R. 7.1 is **denied.** Defendants' motion to request Certification for Interlocutory Appeal to the Third Circuit pursuant to 28 U.S.C. § 1292(b) with a corresponding Motion to Stay is **denied**. Defendants' Motion to Sever the DJSG and Godbehere claims pursuant to Fed. R. Civ. P. 21 is **denied,** as is their motion for an enlargement of time in which to answer. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          February   17 , 2011
Original:      Clerk
cc:            All Counsel of Record
               Hon. Joseph A. Dickson, U.S.M.J.
               File