NOT FOR PUBLICATION

| | |
|---|---|
| JACKSON HEWITT INC. | UNITED STATES DISTRICT COURT |
| | DISTRICT OF NEW JERSEY |
| Plaintiff, | |
| v. | |
| G.A.L.T. INVESTMENTS, LLC, et al. | Consolidated Case No. 10-cv-5108 (DMC) |
| Defendants. | |
| | REPORT AND RECOMMENDATION |

JOSEPH A. DICKSON, U.S.M.J.:

This matter is before this Court for a Report and Recommendation on the motions of Jackson Hewitt, Inc. ("Jackson Hewitt" or "Plaintiff") for an order to show cause as to why Andrew Fournier ("Fournier") should not be prohibited from providing tax preparation services based on the injunction entered against Fournier, Traci Elter ("Elter"), and G.A.L.T. Investments, LLC ("G.A.L.T.") (collectively, "G.A.L.T. Defendants"). Pursuant to Federal Rule Civil Procedure 78, no oral argument was heard. After considering the submissions of the parties, and for good cause, the recommendation of this Court is set forth for the reasons herein expressed separately below.

**I. Background**

The underlying factual histories of the cases in this consolidated matter have been addressed in various opinions issued by this Court, and will only be recited below to the extent necessary to address the instant motion for relief.

Following a settlement conference before this Court, Plaintiff and the G.A.L.T. Defendants consented to an Order, entered by Judge Cavanaugh on December 30, 2010 (the "injunction"), enjoining the G.A.L.T. Defendants from marketing, promoting, or offering tax

preparation services under the Jackson Hewitt mark and from "directly or indirectly violating Section 18.2 of the Franchise Agreements, including preparing or electronically filing individual income tax returns, teaching tax courses, offering Financial Products or owning, engaging in, operating, managing, purchasing, investing in …, franchising, lending money to, leasing or subleasing to, or agreeing to sell or selling all or a majority of assets of the franchise business or their former franchise territories to any competing tax business… within the former franchise territories, and within an area ten miles outside the boundaries of their former franchise territories, for a period of two years."

> The injunction also included the following provision, which is specifically at issue here
>
> Notwithstanding the foregoing, Defendants' counsel has advised Plaintiff's counsel that an entity in which Defendant Fournier has an interest has agreed to process tax returns and Financial Products for the tax return preparer [i.e. "Action Tax"] which intends to operate a tax preparation business at the locations previously operated by Defendants within the franchise territories. Plaintiff contends that this conduct violates the Franchise Agreements and causes Plaintiff irreparable injury and Defendants contend that such conduct does not violate said agreements. The parties agree that this conduct is not a subject of this Order. The parties will brief and submit this issue for resubmission."

The parties subsequently submitted their briefs to this Court for determination as to whether Fournier's activities, as described above, should likewise be enjoined.

Section 18.2 of the franchise agreement ("Section 18.2" or "the non-compete provision") provides that Fournier (among others) may not "directly or indirectly prepare or electronically file individual income tax returns… offer Financial Products or own, engage in, operate, manage… lease or sublease to, or agree to sell or sell all or a majority of the assets of the Franchised Business to any Competing Tax Business… within the Territory or within an area ten (10) miles outside the boundaries of the Territory." ECF No. 41-67.

At issue in this case is Fournier's involvement with Action Tax. Fournier has represented to Plaintiff and this Court that he has an ownership interest in a business[1] that provides certain processing services to Action Tax. Action Tax is operated by Edward Redrow ("Redrow"), a former Jackson Hewitt employee. In Fournier's certification (the "Fournier Certification"), he states that upon Plaintiff's termination of the franchise agreements, the G.A.L.T. Defendants sold their hard assets, i.e. furniture, fixtures, and equipment, to Redrow; however, Fournier asserts G.A.L.T. did not sell the Jackson Hewitt customer lists, customer contact information, trade secrets, or other proprietary information. The Fournier Certification admits that Redrow operates Action Tax out of the former G.A.L.T. franchise locations, but alleges that G.A.L.T. still holds the lease. According to the Fournier Certification, through his business, Fournier reviews and processes tax returns for Action Tax; Action Tax prepares the returns, forwards it to Fournier for review, and Fournier forwards the tax return to the Internal Revenue Department. Fournier also assists Action Tax in offering refund anticipation loans ("RALs") from banks to individual tax payers.[2] The Fournier Certification asserts that it does not provide the same services to Action Tax that G.A.L.T. provided customers when operating the Jackson Hewitt franchise, and that it is not a retail tax preparation business.

Plaintiff argues that Fournier's conduct of processing tax returns and Financial Products for Action Tax, a Jackson Hewitt competitor, constitutes "indirect," if not "direct," preparation of returns and offering of Financial Products (i.e. RALs) because, as Plaintiff alleges, it is not possible to *process* tax returns and Financial Products unless they are first *prepared*. As such, Plaintiff argues, Fournier is evading not merely the spirit, but also the letter, of his post-termination obligations as provided for in the franchise agreement. Plaintiff also argues that

---

[1] Fournier does not identify his business by name, but according to the Fournier Certification, his business is located more than 70 miles from the G.A.L.T. franchise locations.
[2] Fournier asserts his business does not offer RALs to Action Tax or its customers.

3

Fournier, along with the other G.A.L.T. Defendants, have violated the terms of Section 18.2 and of the injunction by transferring all, or a majority of, their assets, including the leasehold, to Edward Redrow ("Redrow"), the owner/operator of Action Tax. Plaintiff asserts that it will be irreparably injured if Fournier is not enjoined, and that the balance of harm and public interest weigh in favor of granting an injunction. Accordingly, Plaintiff moves to enjoin Fournier from any further processing of tax returns or Financial Products within the former G.A.L.T. franchise territory.

## II. Rule 65

Injunctions are governed by Federal Rule of Civil Procedure 65. Under Rule 65, an injunction binds "(A) the parties; (B) the parties' officers, agents, servants, employees and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" provided such individuals "receive actual notice of it by personal service or otherwise." FED. R. CIV. P. 65(d)(2).

"A decision to grant or deny a preliminary injunction is within the sound discretion of the district court." Sanofi–Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 2010 WL 2428561 (D.N.J. June 9, 2010); see also Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir.1982). In determining whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir.1994); see also ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir.1996). Plaintiff bears the burden

of showing that these factors weigh in favor of granting the injunction. See Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.2004). "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3d Cir.1990); see also Nutrasweet Co. v. Vit–Mar Enter. Inc., 176 F.3d 151, 153 (3d Cir.1999). Furthermore, the Third Circuit has repeatedly held that a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." Kos Pharm. Inc., 369 F.3d at 708 (emphasis added); see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir.1994).

The Third Circuit has accorded particular weight to the first two factors: irreparable harm and likelihood of success on the merits. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d. Cir.1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir.1982) ("[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")). Nonetheless, the district court should only award preliminary injunctive relief upon weighing all four factors. Am. Tel. & Tel. Co., 42 F.3d at 1427.

### III. Discussion

Plaintiff moves for an injunction prohibiting Fournier from engaging in tax preparation services within the former G.A.L.T. franchise territory in violation of the non-compete provision. This Court will address each of the factors in turn.

A. Likelihood of Success

Plaintiff has provided this Court with overwhelming evidence demonstrating that Fournier is violating the non-compete clause of the franchise agreement through his business

relationship with Redrow and Action Tax. For example, Plaintiff provided this Court with evidence that the G.A.L.T. Defendants opened Action Tax after their G.A.L.T. franchise was terminated, subsequently hired Redrow as an Action Tax employee, and then, apparently after this case was commenced, sold Action Tax to Redrow. More importantly, based on Fournier's *own* declaration, Fournier is processing tax returns for Action Tax—a tax preparation business that is in direct competition with Plaintiff and that operates out of the former G.A.L.T. franchise locations, even though the lease is apparently still held by G.A.L.T.[3] The fact that Fournier's business may be headquartered 70 miles from the former G.A.L.T. franchise locations is of no moment; Fournier, either indirectly through his unidentified business or directly through some relationship with Action Tax, is engaging in tax preparation services within the G.A.L.T. franchise territory in violation of the non-compete provision.

Fournier tries to argue that Plaintiff has materially breached the franchise agreements,[4] and therefore is precluded from enforcing the non-compete provision. Fournier's argument fails. "A franchisor's right to terminate a franchisee exists independently of any claims the franchisee might have against the franchisor," and the franchisor may "terminate the relationship if the terms of the franchise agreement are violated." S&R Corp. v. Jiffy Lube International, Inc., 968 F.2d 371, 375 (3d Cir. 1992). Therefore, regardless of any pre-termination claims Fournier may have had against Plaintiff, Plaintiff was within its rights to terminate the franchise agreement once the G.A.L.T. Defendants violated the terms of the franchise agreement and Fournier is not relieved from his post-termination obligations. See id.; see also Jiffy Lube International, Inc. v.

---

[3] The Court notes that the only way to reconcile the two facts as alleged by Fournier, i.e. that G.A.L.T. is the leaseholder but Action Tax operates out of the business, is to find either that there is a sublease between Fournier/G.A.L.T. on the one hand and Redrow/Action Tax on the other, or that Fournier/G.A.L.T. have some type of involvement with, or interest in, Action Tax.

[4] Fournier claims that Plaintiff has materially breached the franchise agreements by, *inter alia*, failing to provide adequate tax preparation software, misusing the advertising fund, and failing to maintain and operate a reliable financial reporting system.

Weiss Brothers, Inc., 834 F. Supp. 683, 689-692 (D.N.J. 1993) (finding that while franchisee had pre-termination claims, franchisor was within its rights to terminate franchise, and enforcing restrictive covenant). Furthermore, as Judge Cavanaugh stated in a related case, "two wrongs don't make one right'... [and] [a]lthough [Fournier] allege[s] all sorts of bad faith and misbehavior on the part of Plaintiff, none of those allegations justify the way in which [Fournier has] violated [his] post-termination obligations under the franchise agreements." Jackson Hewitt, Inc. v. DJSG Utah Tax Service, Inc., No. 10-5108, 2011 WL 90311, at *4 (D.N.J. Jan. 10, 2011).

B. Irreparable Harm

This Court finds that Plaintiff would suffer irreparable harm absent an injunction enjoining Fournier from engaging in tax preparation services within the former G.A.L.T. franchise territory. First, the Court notes that by virtue of the injunction already issued against the G.A.L.T. Defendants and entered into by consent of both parties, Fournier has already acknowledged, at least implicitly, that Plaintiff would suffer irreparable harm.[5] Plaintiff will likely lose a significant portion of its business within the former G.A.L.T. territory despite the fact that Plaintiff specifically contracted to protect those rights through the non-compete provision.[6] Furthermore, Plaintiff will suffer irreparable harm if it is prevented from enforcing the provisions of a franchise agreement, both because it sets a bad precedent for enforcement where the franchise agreement is similar to that signed by all of its franchisees and because it leaves the rights of new franchisees within the former G.A.L.T. territory unprotected.

---

[5] Although the Court is mindful that the specific conduct as issue was specifically exempted from the injunction entered by consent, the purpose for the exemption was for this Court to determine whether Fournier's conduct fell under the non-compete provision—not because the parties argued over whether such conduct, if found to be a violation of the non-compete provision, would result in irreparable harm to Plaintiff.

[6] The Court notes that the G.A.L.T. Defendants also implicitly acknowledged in the franchise agreement that breach of the post-termination obligations would result in irreparable injury to Plaintiff, and entitle Plaintiff to injunctive relief. See ECF No. 41-67, ¶ 18.6.


### C. Balancing of Harm and Public Interest

As to the two remaining factors – the balance of harms and the public interest – this Court finds that both factors weigh in favor of granting an injunction. With regard to the balance of harms, this Court finds that any harm suffered by Fournier as a result of enforcing the non-compete provision is *de minimis* given that such terms were expressly accepted by Fournier under the franchise agreement and that any harm suffered is a direct consequence of his *own* conduct; on the other hand, the hardship faced by Plaintiff should Fournier be permitted to engage in tax preparation services within the former G.A.L.T. territory is significant. Finally, there is no doubt that the public has an interest in upholding freely negotiated and reasonable business contracts, and in not allowing parties to circumvent those contractual agreements. As such, the Court determines that the public interest is best served by holding Fournier to the terms of the franchise agreement.

### IV. Conclusion

Based on the foregoing, this Court respectfully recommends that the District Court grant Plaintiff's motion and issue an injunction prohibiting Fournier from engaging in tax preparation services within the G.A.L.T. territory.[7]

_____
JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Dennis M. Cavanaugh, U.S.D.J.

---

[7] As should be clear from the Report and Recommendation issued on December 15, 2011 in Jackson Hewitt Inc. v. H.E.A.T. Enterprises, LLC, et al., Fournier's tax preparation business would also be prohibited in the H.E.A.T. territory.