NOT FOR PUBLICATION

| | | |
|---|---|---|
| JACKSON HEWITT INC. | : | UNITED STATES DISTRICT COURT |
| | : | DISTRICT OF NEW JERSEY |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| NATIONAL TAX NETWORK, LLC, and KATHRYNE WARD, | : | Consolidated Case No. 10-cv-5108 (DMC) |
| | : | |
| Defendants. | : | |
| | : | |
| _____ | : | OPINION |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before this Court on Defendant Kathryne Ward's ("Defendant" or "Ward") motion seeking the recusal of the undersigned as well as that of Honorable Joseph A. Dickson, U.S.M.J. from this matter pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455. Pursuant to Federal Rule Civil Procedure 78, no oral argument was heard. After considering the submissions of the parties, and for good cause, this Court denies Defendant's motion for the reasons herein expressed separately below.

**I. Background**

The underlying factual histories of the cases in this consolidated matter have been addressed in various opinions issued by this Court, and will only be recited below to the extent necessary to address the instant motion for relief.

Jackson Hewitt, Inc. ("Plaintiff" or "Jackson Hewitt") instituted this action against National Tax Network, LLC ("NTN") and Ward on November 11, 2010 (Civil Action No. 10-5912, Dkt. No. 1), and on November 22, 2010, this action was consolidated with several other cases under Civil Action No. 10-5108.

1

NTN is an Arizona limited liability company with its principal place of business in Arizona. NTN is wholly owned by WSA Financial Services, LLC ("WSA"). NTN is a former Jackson Hewitt franchisee. Ward is a citizen and resident of Arizona. Ward owns 100% of WSA Financial and is the guarantor of NTN's obligations under each of the franchise agreements between NTN and Jackson Hewitt. Ward is also a licensed attorney in Arizona, but since she is not admitted in New Jersey she has represented herself *pro se* in this matter.

On January 10, 2011, the undersigned granted Plaintiff's motion for a preliminary injunction and denied Ward's cross motion to dismiss. On January 28, 2011, Ward filed a motion for interlocutory appeal, stay of proceedings and severance of claims as well as a motion for reconsideration; those motions were denied by the undersigned on February 17, 2011. On March 7, 2011, Ward filed a second motion to dismiss; this motion was denied by the undersigned on April 15, 2011. On June 1, 2011, Ward filed a motion for a stay of all proceedings; Judge Dickson granted a one-week stay, so that the effect of Plaintiff's bankruptcy filing on the underlying action before this Court could be ascertained, on June 28, 2011. On September 6, 2011, Judge Dickson entered a Supplemental Pretrial Scheduling Order ordering NTN and Ward to (1) file a responsive pleading by September 8, 2011; (2) produce initial disclosures by September 15, 2011; (3) respond to interrogatories and requests for production, and to produce responsive documents by September 15, 2011; and (4) Ward's deposition was to be taken by September 23, 2011. The Order also indicated that failure to abide by the Order could result in sanctions pursuant to Federal Rules of Civil Procedure 16(f) and 37. On September 8, 2011, NTN filed an Answer; however, NTN never served initial disclosures, responded to interrogatories or requests for production, or produced responsive documents.

Ward *never* filed a responsive pleading, served initial disclosures, responded to interrogatories or requests for production, or produced responsive documents.

On September 20, 2011, Plaintiff filed a motion for sanctions and entry of default judgment against NTN and Ward. *No opposition was ever filed.* On November 29, 2011, the undersigned granted Plaintiff's motion for sanctions and default judgment.[1]

On December 19, 2011, Ward filed this motion for recusal of the undersigned and of the Honorable Joseph A. Dickson, U.S.M.J.

**II. Legal Standard**

The decision of whether to recuse lies within the discretion of the trial judge. *United States v. Wilensky*, 757 F.2d 594, 599–600 (3d Cir.1985); *see also In re Kensington*, 353 F.3d 211, 224 (3d Cir. 2003) (stating that discretion is confided in the district judge because the presiding judge is in the best position to understand the implications of matters alleged in a recusal motion). There are two federal statutes that dictate the circumstances under which a federal judge should recuse. First, 28 U.S.C. § 144,[2] applicable to federal district court judges, provides that a judge should recuse if the party seeking recusal submits a "timely and sufficient affidavit" illustrating that the judge has a personal bias or prejudice towards a party. 28 U.S.C. § 144. The affidavit must be timely, which means that the affidavit must be filed before the Court

---

[1] On December 14, 2011, NTN filed a motion to vacate the judgment pursuant to the automatic stay provision of Section 362 of the Bankruptcy code. On December 20, 2011, the undersigned granted the motion as to NTN. On February 10, 2012, Ward filed a motion to vacate the judgment as to her; as of the date of this Opinion, that motion is still pending.

[2] Section 144 provides: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." 28 U.S.C. § 144.

has reached the merits of an issue. *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1356 (3d Cir. 1990) (finding that a recusal motion filed after entry of orders dismissing the complaint and imposing sanctions was not timely filed). "Any other conclusion would permit a party to play fast and loose with the judicial process by 'betting' on the outcome." *Id*. With regard to the sufficiency requirement, "Section 144 requires an affidavit of fact that must convince a reasonable person of the Judge's impartiality." *Carter v. New Jersey*, No. 11-439, 2011 WL 5864083, at *11 (D.N.J. Nov. 22, 2011). "Conclusory allegations need not be accepted as true." *Jones*, 899 F.2d at 1356; *see also Carter*, 2011 WL 5864083, at *11 ("A conclusory affidavit is not sufficient for recusal.").[3]

Similarly, Section 455(b)(1)[4] of the same title, applicable to all justices, judges, and magistrates of the Unites States, provides that a judge should recuse if the judge has a personal bias or prejudice towards a party. 28 U.S.C. § 455(b)(1). However, unlike Section 144, Section 455(b)(1) does not include the requirement of a timely and sufficient affidavit.

Furthermore, Section 455(a)[5] states that a judge should recuse himself if the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under Section 455(a), "the test that applies is 'whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned.'" *Meza-Role v. Partyka*, No. 11-2307, 2011 WL 2579884, at *2, fn.1 (D.N.J. June 27, 2011) (*citing In re: Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004)); *see also Jones*, 899 F.2d at 1356 ("Under this section a judge

---

[3] "If the motion is made pursuant to § 144, another judge must rule on the recusal motion so long as the supporting affidavit meets the 'sufficiency test.'" *Carter v. New Jersey*, No. 11-439, 2011 WL 5864083, at *10, fn. 7 (D.N.J. Nov. 22, 2011) (*citing In re Kensington Int'l Ltd.*, 353 F.3d 211, 224 (3d. Cir.2003)). The Court is satisfied that because the affidavit filed by Ward does not satisfy the "sufficiency test," as described more fully below, this motion for recusal may be ruled upon by this Court.
[4] Section 455(b)(1) provides that any justice, judge, or magistrate judge of the United States shall also disqualify himself if "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1).
[5] Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

must consider whether a reasonable person knowing all the circumstances would harbor doubts concerning the judge's impartiality."). "This is an objective inquiry that considers not only whether a judge is actually impartial but whether there is an appearance of impartiality." *Meza-Role*, 2011 WL 2579884, at *2, fn.1 (*citing In re: Community Bank of Northern Virginia*, 418 F.3d 277, 320 (3d Cir. 2005)).

"Thus, these statutory provisions provide that there are two reasons for granting a motion for recusal: (1) the judge has a personal bias or prejudice towards a party, *see* 28 U.S.C. § 144, 455(b)(1); or (2) the judge's impartiality might reasonably be questioned, *see* 28 U.S.C. § 455(a)." *Id*. at *1.

Under both statutes, the same type of bias is required—only extrajudicial bias requires disqualification. *Johnson v. Trueblood*, 629 F.2d 287, 290-91 (3d Cir. 1980). "'Extrajudicial bias' refers to a bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings." *Id*.; *see also Meza-Role*, 2011 WL 2579884, at *2 (stating that a party "generally must show that such bias or prejudice is grounded in extrajudicial sources, such as personal animus, rather than judicial actions that can be corrected on appeal"); *Carter*, 2011 WL 5864083, at *11 ("The alleged prejudice usually obtains from an extrajudicial source; a judge's prior adverse ruling alone is not sufficient cause for recusal."). "In the absence of extrajudicial bias, a party seeking recusal must show that a judge has a 'deep-seated and unequivocal antagonism that would render fair judgment impossible' to obtain recusal." *Meza-Role*, 2011 WL 2579884, at *2 (*citing Liteky v. United States*, 510 U.S. 540, 555–56 (1994) ("opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or

partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible")).

## III. Discussion

    A. Recusal under Sections 144 and 455(b)(1)

As stated above, a motion for recusal under 28 U.S.C. § 144 requires a timely and sufficient affidavit. Ward's motion for recusal, and accompanying affidavit, was filed approximately eleven (11) months after the conduct about which she initially complains; more importantly, the motion was filed only after this Court granted Plaintiff's motion for sanctions and entered default judgment. Given this delay, this Court cannot find the affidavit to be timely. *See Jones*, 899 F.2d at 1356 (finding that a recusal motion filed after entry of orders dismissing the complaint and imposing sanctions was not timely filed and stating "[a]ny other conclusion would permit a party to play fast and loose with the judicial process by 'betting' on the outcome.").

Ward's affidavit contains six (6) statements in total. In her affidavit, Ward asserts the following: "[t]he actions taken by Judge Cavanaugh and Judge Dickson in the matter are objectively biased against me, an out of state pro se Defendant, and have resulted in denial of my due process rights, abuse of power and discretion and warrant recusal under 28 U.S.C. §455 [and § 144][6]." Ward Aff. at 4, ECF 255-1, p. 38-39. This bare-boned, conclusory allegation lacks the factual particularity required to establish the sufficiency of the affidavit; "[c]onclusory allegations need not be accepted as true." *Jones*, 899 F.2d at 1356. Ward further asserts "that the facts and allegations contained in the Motion to Recuse are true based on her own knowledge

---

[6] In this sentence of the affidavit, Ward does not include 28 U.S.C. §144 , and only specifically references 28 U.S.C. §455. However, given that 28 U.S.C. §455 does not require an affidavit, but 28 U.S.C. §144 does have such a requirement, this Court presumes she intended all allegations within the affidavit to support her motion for recusal under both sections.

except to those matters and things alleged on information and belief and that as to those matters, she believes them to be true." Ward Aff. at 6, ECF 255-1, p. 38-39. Presumably, through this statement, Ward is attempting to incorporate by reference all of the facts and allegations included in her brief in support of her motion. This is improper. However, even if the Court were to incorporate all of the allegations in the moving brief, the Court would not be able to find the affidavit is sufficient because the moving brief is full of conclusory allegations and factual inaccuracies, as will be detailed further below. Accordingly, Ward's affidavit is neither timely nor sufficient, and her motion for recusal based on Section 144 should be denied on those grounds alone.

The Court will now address the allegations contained in Ward's brief in support of the motion for recusal.

- Ward claims that Judge Dickson entered an Order (ECF 54) on December 30, 2010, which prematurely granted Plaintiffs' request for a preliminary injunction before receiving Ward's timely filed response (ECF 59) on January 3, 2011.

A review of the record reveals that Ward's allegation is patently false. First, the Order entered on December 30, 2010 (ECF 54) was entered by the undersigned, not Judge Dickson. More importantly, however, the Order was a *Consent Order* that pertained strictly to the Defendants in the *G.A.L.T. matter*—the Order had *no* bearing on Ward, and none of Ward's rights were implicated. Accordingly, the fact that an Order, which pertained to other Defendants and was entered with the consent of those parties, was entered prior to receipt of Ward's response is irrelevant, and certainly is not indicative of any bias or prejudice.

- Ward complains that on January 10, 2011, the undersigned entered an Opinion and Order (ECF 67, 68) granting Plaintiff's motion for a preliminary injunction and denying Ward's cross-motion to dismiss. Ward complains that the motions were decided without oral argument, and without allowing her to adequately respond because she claims papers were originally due on February 14, 2011 with a February 18, 2011 hearing.

7

First, based on Federal Rule of Civil Procedure 78, the Court is entitled to decide motions on the papers without any oral argument. Given that this practice is set forth in the Federal Rules of Civil Procedure, and it is the routine practice of this Court, the fact that the motions were decided on the papers is not indicative of any bias or prejudice. Additionally, it is unclear where Ward came up with the February 14, 2011 and February 18, 2011 dates, as these dates do not appear anywhere in the record. When Ward filed her cross-motion to dismiss—which, it must be noted, served as Ward's opposition to the motion for a preliminary injunction—a February 7, 2011 motion day was automatically entered on the docket. However, given that the cross-motion was filed in opposition to a motion for a preliminary injunction, which was originally filed on December 6, 2010, it is neither surprising nor improper that the motions were decided by January 10, 2011. No reasonable person could ascribe impartiality to the Court under these circumstances.

- Ward claims that Judge Dickson ordered Ward to provide evidence disproving any association with Jackson Accounting based solely on a sworn declaration submitted by Plaintiff's counsel. Ward further claims that Judge Dickson made credibility determinations and willfully ignored Ward's explanation of industry practices (related to keeping a person on the phone).[7]

A review of the January 26, 2011 hearing (ECF 114) reveals that Ward's claims regarding bias and prejudice are unwarranted. Judge Dickson did ask Ward questions about the Declaration, but doing so was neither unusual nor prejudicial or biased; the Court was seeking her position on alleged facts. Additionally, Judge Dickson did not make any credibility determinations, and specifically reserved any decision on the issue. *See Tr. Jan. 26, 2011 hearing, ECF 114, p. 96, lines 4-6*. Finally, Judge Dickson did order Ward to provide the Court

---

[7] Ward also complains that Plaintiff's counsel asked the Court to find Ward in contempt. The Court refused the request. Accordingly, it is entirely unclear how this is at all relevant to the instant motion.

with an affidavit regarding her attempts to transfer phone lines and contact Jackson Accounting *so as to show compliance with the undersigned's Order.*

- Ward claims that during the January 26, 2011 hearing, Judge Dickson also solicited an *ex parte* communication from Ward regarding her medical condition, which she asserted prevented her from traveling, and accepted the explanation without ever requiring the specific reasons be revealed on the record.

This is true; the Court did have an *ex parte* conversation with Ward regarding her medical condition as Judge Dickson needed to decide whether Ward should be excused from personally appearing. The Court had the conversation *ex parte*, rather than on the record in open court, in order to protect Ward's privacy. It is worth noting that while the content of the conversation remained private between Ward and this Court, all other parties were aware that the conversation occurred. No one objected. *See Tr. Jan. 26, 2011 hearing, ECF 114, p. 91, lines 1-2* ("When I get off the phone, I'll call you, Ms. Ward, and talk to you about your personal situation."); *see id. at p. 96, lines 12-24* (Judge Dickson asking Ward to hold on the phone so he could go into chambers and speak with her privately). Finally, it is hard to comprehend how this Court's *ex parte* conversation with Ward regarding her private medical condition, which occurred out of respect for her privacy and resulted in this Court excusing Ward from personally appearing, demonstrates any bias or prejudice *against* Ward.

- Ward has several complaints regarding the undersigned's Opinion and Order entered on February 17, 2011 (ECF 148, 151) denying her motion for reconsideration (ECF 104) and her motion for interlocutory appeal, stay pending appeal and severance of claims (ECF 103). Ward alleges that the undersigned "threatened to hold Defendant Ward in contempt of the January 10, 2011 [Order] without adequate hearing and in violation of due process." Ward further alleges the undersigned "gave no credence" to the fact that she has a medical problem that prevents her from travelling to New Jersey; according to Ward, the fact that "[the undersigned] cannot accept the explanation given by Defendant Ward, an officer of the Court, to Judge Dickson displays a lack of professional courtesy and an inherent bias against her and her credibility."

First, the undersigned did not, at *any* point in the Opinion or Order, threaten to hold Ward in contempt. The record is barren in this regard. There is an Order, entered by Judge Dickson on February 18, 2011 (ECF 152), to show cause as to why the *Godbehere Defendants* should not be sanctioned and held in contempt for failing to comply with the Court's February 10, 2011 Order. It is unclear if this is the "threat" of being held in contempt to which Ward was referring, but given that it pertained to the Godbehere Defendants—*not* Ward—it had no bearing on Ward, and is irrelevant.

Second, the undersigned merely pointed out that the Court had not been provided with any evidence of a medical condition to demonstrate that Ward was a "qualified individual with a disability" under the Americans with Disabilities Act ("ADA"). Given that Ward was arguing for a change of venue based on the ADA, it was entirely appropriate for the Court to evaluate whether the ADA was applicable to Ward. Furthermore, the undersigned went on to state that even assuming Ward had a medical condition that qualified under the ADA, there was no basis for change of venue as Ward was not denied access to the Courts since she was allowed to participate telephonically.

- Ward claims that because the undersigned issued an Opinion and Order (ECF 171, 172) denying her motion to dismiss on April 15, 2011—the same day her "timely reply" was filed—there is an inference "that the Court's decision was predetermined before issues were fully briefed and demonstrates bias against Ward."[8]

A review of the motion day calendar reveals that Ward's Reply was due on April 11, 2011. Factoring in the additional three days allowed under Federal Rule of Civil Procedure 6(d) (which provides for three additional days when service is effectuated pursuant to Federal Rule of

---

[8] Throughout her moving papers, Ward claims that the Court repeatedly issued Opinions and entered Orders before her "timely" responses were filed. With the exception of the Consent Order as to the *G.A.L.T. Defendants* (ECF 54), which clearly had no bearing on Ward, and Opinion and Order (ECF 171, 172) dealing with her motion to dismiss (addressed above), Ward fails to identify any particular instance where this allegedly occurred. Such conclusory and vague complaints lack the factual particularity needed to show any bias or prejudice, especially since a review of the record demonstrates these claims are baseless.

Civil Procedure 5(b)(2)(c), i.e. by mail), the due date for Ward's Reply was April 14, 2011. Based on the documents as scanned, the Reply was mailed on April 12, 2011 and received in the Clerk's office on April 15, 2011. Accordingly, Ward's Reply was *not* timely—even with the three additional days allowed under Rule 6(d).[9] The Court is not required to consider submissions which are filed late. Moreover, many of the arguments raised in Ward's motion to dismiss were arguments Ward had previously put forth, and which the Court had already considered and rejected, and a review of the Opinion shows that the decision was largely based on the plain language of the Franchise Agreement.

- Ward claims that Judge Dickson referred to the Court and Plaintiff as "we" and argued from the bench during the January 26, 2011 conference.

A review of the transcript from the January 26, 2011 conference (ECF 114) clearly demonstrates that the word "we" was only used by Judge Dickson in an inclusive and collective way.

- Ward claims that the undersigned "willfully misapplied legal authority to reach predetermined conclusions" in favor of Plaintiff. Specifically, Ward points to the undersigned's failure to follow *Ryan v. Hyden,* 10-cv-1092, 2010 WL 4072605 (S.D. Cal. Oct. 18, 2010), which Ward addressed in her motion for reconsideration.

First, and most importantly, any disagreements Ward may have with the rulings of this Court may be proper grounds for an appeal, but they are not proper grounds for recusal.[10] Second, as an officer of the Court, Ward surely knows that a decision from the Southern District

---

[9] Ward claims that "on at least one occasion, [she] sent a fax to [the undersigned's] chambers certifying to him that her responsive brief had been mailed that day and ask[ing] that he please wait to issue his finding until such brief could be received, docketed and available for consideration." Br. at 6, ECF 255-1. Like with most of the allegations in Ward's brief, the specifics are lacking; Ward has not provided any evidence that she sent any faxes or that faxes were received by the undersigned's chambers, and has failed to identify which motions are at issue. More importantly, regardless of whether or not the faxes were received (and ignoring the fact that it is not the undersigned's practice to accept faxes from any party), Ward has failed to show that the Court failed to consider any timely filed response.

[10] Ward also objects to the Court's various rulings on the applicability and scope of the Guaranty, choice of law, and venue. Again, any objections or complaints regarding the decisions of the Court are proper grounds for appeal—not grounds for recusal.

of California is *not* binding on this Court; at best, it could be persuasive authority which the Court can follow or disregard in its discretion.  But more importantly, Ward did not even include this case in her motion for reconsideration.

- Ward claims that on the day of the Rule 16 pretrial scheduling conferences in these consolidated cases, Judge Dickson learned, through an *ex parte* conversation, that Plaintiff had filed for bankruptcy, and that the decision of Judge Dickson to proceed with the Rule 16 conference without informing Ward of Plaintiff's bankruptcy filing was "denial of Ms. Ward's due process rights and clearly demonstrate[d] Judge Dickson's bias against her."

This issue, including how and when this Court was informed of Plaintiff's bankruptcy filing, the basis for deciding to move forward with the Rule 16 conferences, and the subsequent stay pending determination of how to proceed given the bankruptcy filing, were fully addressed in this Court's Letter Order entered on June 28, 2011 (ECF 215).  The Court need not reiterate the substance of that letter, but will affirmatively assert that Ward's due process rights were never violated.

- Ward claims that a letter she submitted, which was addressed to the undersigned, was not filed with the Court but rather "intercepted" and delivered to the undersigned's chambers. Ward claims that when she inquired as to why the letter had not been docketed she was told she had to submit a clean copy to the Clerk's office because the undersigned had marked on the copy I had; Ward characterized the undersigned's written notes as an "angered markup."  The letter was docketed on June 21, 2011 (ECF 215).

First, the letter was not "intercepted;" it was addressed to the undersigned, and therefore, not surprisingly, it was delivered to my chambers.  Second, all filings by each and every party must be filed on the docket (whether via the Clerk's office or electronically) with a courtesy copy sent to chambers.  Simply requiring Ward to comply with this rule by submitting a "new copy" of her letter to the Clerk's office so that it could be filed on the docket in no way demonstrates any bias or prejudice against her.

Finally, Ward's characterization of the undersigned's "markup" of her letter as "angered" is completely baseless since, among equally compelling arguments, Ward never saw the marked-up letter. Frankly, responding to this allegation gives it more merit than it is due.

- Ward has several complaints regarding the Opinion and Order regarding default judgment and sanctions against NTN and Ward, entered by the undersigned on November 29, 2011 (ECF 246, 247). First, Ward claims that she stopped participating in the case because Judge Dickson and the undersigned were biased against her, and claims that it is therefore unfair to grant default judgment and sanctions. Second, Ward asserts that NTN filed for bankruptcy protection on or about October 16, 2011, and so there should have been an automatic stay of any proceedings against NTN, especially since bankruptcy filings are a "matter of public record." Finally, Ward complains that when she contacted the undersigned's chambers, after the Order was entered, she was told that NTN would have to affirmatively assert its rights under § 362 of the U.S. Bankruptcy Code by filing a motion to vacate or a motion for reconsideration of the Court's November 29, 2011 Opinion and Order.

Ward should know that to remain silent after the motion for default judgment and sanctions was filed, rather than file any opposition or alert the Court to NTN's bankruptcy filing, weighed in favor of granting Plaintiff's motion. Instead, Ward did nothing, and her concession that she stopped participating in the case only further supports the Court finding that default judgment and sanctions were appropriate.

The fact that NTN's bankruptcy filing is a matter of public record[11] does not relieve NTN (or Ward, as the guarantor and co-Defendant) of its responsibility to properly notify this Court. It is not up to this Court to scour every possible public record in an attempt to ferret out information that may be relevant to its pending cases. The Court can only act on the record before it, and nothing was ever filed informing the Court that NTN had filed for bankruptcy and that the proceedings were therefore subject to a § 362 stay. When the Court was alerted, the judgment as to NTN was vacated.

---

[11] Ward seemingly points to Judge Dickson's statement in the June 28, 2011 letter that bankruptcy filings are a matter of public record as support for her position that the Court should have been aware of NTN's bankruptcy filing by virtue of it being a public record. Any such argument misses the point; there is a clear difference between notifying the Court regarding the filing, and the filing itself being a matter of public record.

13

Requiring Ward, and/or NTN, to properly put information before the Court and follow proper procedures, either by way of a motion to vacate or a motion for reconsideration, is neither prejudicial nor biased. It certainly cannot be considered "punishment."

- Ward claims that the Court made it impossible for her to participate, and at one point asserts that she was excused from personally appearing and allowed to participate telephonically "for the benefit of Plaintiff." Ward also repeatedly objects to the briefing schedules and deadlines set by the Court, and to the fact that as a *pro se* Defendant she was unable to file electronically and had to rely on the mail.

It is impossible for this Court to understand how excusing Ward from appearing personally—an accommodation this Court made at Ward's request—could in any way be described as an action taken for the benefit of the Plaintiff; the Court was attempting to accommodate Ward based on her assertion that she was unable to travel due to a medical condition, and in no way was that accommodation prejudicial or biased against Ward.

To the extent that Ward objects to deadlines and briefing schedules that were imposed, all deadlines were required based on the exigencies of the case or the rules which govern this Court's motion calendar.

Finally, with regard to Ward's complaints about being unable to file electronically, electronic filings are governed by Local Civil Rule 5.2, which applies equally to all parties. Based on the Electronic Case Filing ("ECF") practices and procedures, which are incorporated in Local Civil Rule 5.2, a *pro se* party is not eligible to file electronically, but rather must file paper copies of all documents with the Clerk's office; however, he/she may sign up to receive filings electronically. Ward initially signed the consent and registration form to receive filings electronically (ECF 62), but then later, acting of her own accord, revoked her consent (ECF 110). Given that all parties acting *pro se* are required to file paper copies based on the Local Civil

Rules, and that it was Ward—not the Court—who revoked consent to receive filings electronically, it is entirely unclear how these facts evince any prejudice or bias against Ward.

Based on all of the foregoing, Ward has failed to show any bias or prejudice as her allegations are conclusory and/or factually inaccurate. The allegations are largely disagreements with the Court's legal conclusions in disguised form. Indeed, to take a step back and view Ward's allegations of bias from a higher level, it is impossible to understand what possible basis exists for any such bias. Ward has never made a personal appearance in these matters. She makes no allegation of gender, race, age or religious bias. She seems to indicate that her status as a *pro se* litigant gives rise to bias. But, she is only one of many *pro se* litigants who appear in this Court. She makes no specific allegation that either the undersigned or Judge Dickson is biased in favor of Plaintiff. The application, in its lack of articulable allegations of bias, is baffling. Since Ward has not, and cannot, show any personal bias or prejudice on behalf of the undersigned or Judge Dickson, her motion for recusal based on Sections 144 and 455(b)(1) is denied.

    B.  Recusal Under Section 455(a)

As stated above, recusal under this section is appropriate when a reasonable person, knowing all the circumstances, would harbor doubts concerning the judge's impartiality. There is nothing in this record that supports the conclusion that a reasonable person would doubt the impartiality of the undersigned or that of Judge Dickson. The crux of Ward's argument is that this Court was wrong in exercising personal jurisdiction over her, refusing to transfer venue, and enforcing the Guaranty. "Disagreement with a judge's determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal." *Jones*,

899 F.2d at 1356. Accordingly, Ward's motion for recusal based on Section 455(a) must also be denied.

## IV. Conclusion

Based on the reasons set forth above, neither the undersigned nor Judge Dickson will recuse himself from this matter. After careful consideration of Ward's submissions, there is nothing to suggest personal bias or prejudice, nor are there any facts from which a reasonable person with knowledge of all of the facts would conclude that the impartiality of the undersigned or of Judge Dickson might reasonably be questioned. Accordingly, Ward's motion for recusal of the undersigned as well as Honorable Joseph A. Dickson, U.S.M.J. is denied.

       S/Dennis M. Cavanaugh
DENNIS M. CAVANAUGH, U.S.D.J.

cc:     Hon. Joseph A. Dickson, U.S.M.J.