DUANE MORRIS LLP
A Delaware Limited Liability Partnership
Eric Breslin, Esq.
Michael S. Zullo, Esq.
J. Manly Parks, Esq.
One Riverfront Plaza
1037 Raymond Boulevard
Suite 1800
Newark, NJ 07102-5429

*Attorneys for Defendants*
*Barnes Enterprises, Inc. &*
*Richard S. Barnes*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jackson Hewitt, Inc. <br><br> Plaintiff, <br><br> v. <br><br> Barnes Enterprises, Inc. and Richard S. Barnes, <br><br> Defendants. | Case No. 2:10-CV-05108-DMC – JAD <br><br> **MOTION DAY: JANUARY 22, 2013** |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

DUANE MORRIS LLP
A Delaware Limited Liability Partnership
Eric Breslin, Esq.
Michael S. Zullo, Esq.
J. Manly Parks, Esq.
One Riverfront Plaza
1037 Raymond Boulevard
Suite 1800
Newark, NJ 07102-5429

*Attorneys for Defendants*
*Barnes Enterprises, Inc. &*
*Richard S. Barnes*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT........................................................................................................2

    A.  Jackson Hewitt Fails to Offer Any Direct Evidence of Infringement the Barnes Defendants. ............................................................................... 2

    B.  Jackson Hewitt Has Failed to Produce Any Evidence of the Likelihood of Customer Confusion. ............................................................................... 6

    C.  Jackson Hewitt Has Failed to Establish a Basis to Support a Theory of Contributory Infringement. .................................................................... 10

III. CONCLUSION..................................................................................................13

i

# TABLE OF AUTHORITIES

**Cases**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. Pa. 2000) ..........7, 9

*AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d. Cir. 1994) ......................... 11-12

*Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270 (3d Cir. N.J. 2001) ..............7

*Citizens Fin. Group, Inc., v. Citizens Nat. Bank of Evans City*, 383 F.3d 110 (3d Cir. 2004) .......................................................................................................................................7

*Global Vision Prods. v. Pfizer Inc.*, 04 Civ. 9198 (LAK), 2006 U.S. Dist. LEXIS 6042 (S.D.N.Y. Feb. 14, 2006) ........................................................................................... 3-4

*Lorillard Tobacco Co. v. Atl. Produce & Supermarket*, 06-951 (JBS), 2007 U.S. Dist. LEXIS 30337 (D.N.J. Apr. 23, 2007) .................................................................................3

*McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350 (3d Cir. 2007) ................7

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231 (11th Cir. Ga. 2007) ...............................................................................................................................10

*Primepoint, L.L.C. v. Primepay, Inc.*, 545 F. Supp. 2d 426 (D.N.J. 2008).................................. 6-7

*Procter & Gamble Co. v. Haugen*, 317 F.3d 1121 (10th Cir. 2003) .............................................10

*Smith v. City of Allentown*, 589 F.3d 684 (3d Cir. 2009)................................................................6

*Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.*, No. 03-799 (WHW), 2005 WL 2656676 (D.N.J. Oct. 18, 2005).......................................................................................4

**Statutes**

15 U.S.C. § 1114(1) ......................................................................................................................10

15 U.S.C. § 1114(1)(a)....................................................................................................................3

Defendants Richard Barnes and Barnes Enterprises, Inc. ("**Barnes Enterprises**") (collectively, the "**Barnes Defendants**") submit this reply in further support of their Motion for Partial Summary Judgment on Counts I-VI.

## I.     INTRODUCTION

Jackson Hewitt's opposition fails to address the fatal flaw with its trademark claims – the utter lack of evidence that the Barnes Defendants actively used Jackson Hewitt marks in connection with the offering of competing tax services. In a transparent attempt to conceal this flaw, Jackson Hewitt refers throughout its brief to the acts of the "Defendants." But this obfuscating language cannot substitute for actual evidence. All of the specific acts identified by Jackson Hewitt as those of the "Defendants" are actually the acts non-parties Customers First, Kristi Barnes and Scott Barnes. None of those acts are those of Richard Barnes or Barnes Enterprises. For example, Jackson Hewitt incredibly argues that Richard Barnes committed trademark infringement because *Scott Barnes*, acting on behalf of *Customers First*, provided a business card with the Jackson Hewitt logo on it to a third party. The only connection to Richard Barnes is that his name had been "crossed out" on the card and replaced with Scott's.

Jackson Hewitt may very well have offered evidence to support a trademark case against Customers First, Kristi Barnes and Scott Barnes. But those entities are not defendants in this case. Jackson Hewitt has failed, after months of discovery, to produce actual evidence that the *Barnes Defendants* are liable for trademark infringement. In this regard, *Jackson Hewitt has failed to produce evidence of a single instance where either of the Barnes Defendants offered tax services while using the Jackson Hewitt marks*. In fact, Jackson Hewitt's own representative testified without qualification that she:

1

- never observed Richard Barnes representing to anyone that he was a Jackson Hewitt tax service provider after termination;

- never observed Richard Barnes offering any tax prep services in any of his old locations after termination; and

- never observed Richard Barnes acting as a supervisor at any of his old locations, or interacting with any Customers First employees at his former locations after termination.

Further, Richard Barnes and Scott Barnes both testified in detail that Richard Barnes was unequivocal in letting his employees know that Barnes Enterprises was closed and that Richard could no longer be involved in the business. That testimony is undisputed.

Because it cannot establish a case against the Barnes Defendants based on any evidence, Jackson Hewitt begs the Court to engage in speculation by cavalierly suggesting that Richard must have been involved in the alleged infringement because Customers First was owned by his wife and operated by his father. Of course Jackson Hewitt has failed to offer even a scintilla of evidence to support this bald allegation despite a full and complete discovery period during which it deposed Richard, Kristi and Scott. Jackson Hewitt cannot survive summary judgment by simply suggesting, as it has throughout this litigation, that "where there is smoke, there is fire." Jackson Hewitt has had the benefit of full and complete discovery and its inability to produce actual evidence of infringement attributable to the Barnes Defendants is fatal to its trademark claims.

## II. ARGUMENT

### A. Jackson Hewitt Fails to Offer Any Direct Evidence of Infringement Against the Barnes Defendants.

In an attempt to support its trademark claims against the Barnes Defendants, Jackson Hewitt points to the fact that Jackson Hewitt signs remained up at several former Barnes locations after the Barnes Defendants were terminated as a Jackson Hewitt

2

franchisee. *See* Opposition at p. 9. This confuses the question of whether there has been trademark infringement with that of whether there may have been a breach of one of the post-termination covenants in the franchise agreement between the parties. Jackson asserts that infringement occurred because the signs remained in place, but fails to offer any evidence that the Jackson Hewitt marks were being used in commerce by the Barnes Defendants.[1]

However, Section 1114(1)(a) of the Lanham Act states that a person is liable for trademark infringement only "if that person uses *in commerce*. . . any reproduction, counterfeit, copy of colorable imitation of a registered mark *in connection with the sale, offering for sale, distribution, or advertising of any goods or services*." *Lorillard Tobacco Co. v. Atl. Produce & Supermarket*, 06-951 (JBS), 2007 U.S. Dist. LEXIS 30337, at *6 (D.N.J. Apr. 23, 2007) (citing 15 U.S.C. § 1114(1)(a))(emphasis added). Thus, "there can be no infringement . . . claim absent actual use in commerce." *Global Vision Prods. v. Pfizer Inc.*, 04 Civ. 9198 (LAK), 2006 U.S. Dist. LEXIS 6042, at *9 (S.D.N.Y. Feb. 14, 2006) (granting summary judgment on trademark infringement and false designation of origin claims because defendant never sold, marketed, or used the mark in connection with any products or services).

Accordingly, Jackson Hewitt's Lanham Act claims must fail because Jackson Hewitt has failed to meet its burden to demonstrate that the Barnes Defendants sold,

---

[1] On this point, it is important to recall that the tax business is highly seasonal, and virtually no revenues are generated during the tax "off-season" from April 16 to January 1 of the following year. Consequently, there was no meaningful commerce going on at all at *any* of the former Barnes Jackson Hewitt locations (or any other Jackson Hewitt locations, for that matter) for several months following the termination of the Barnes franchises by Jackson Hewitt.

3

offered for sale, distributed, or advertised *any goods or services* in connection with the Jackson Hewitt trademarks.  While the Barnes Defendants' alleged failure to remove all Jackson Hewitt signs  immediately[2] may have been evidence of a breach the contractual post-termination covenants in the franchise agreements, such failure does not constitute trademark infringement absent a showing of: (1) use of the disputed marks in commerce; (2) by the Barnes Defendants.  *Id*.  These is simply no such evidence.

Jackson Hewitt has failed to produce any evidence that the Barnes Defendants used its marks in connection with the offering tax services to the general public after termination.  Indeed, Sandi Peters, who was the Jackson Hewitt employee responsible for tracking the Barnes Defendants' compliance with post-termination covenants, testified that she:

- never observed Richard Barnes representing to anyone that he was a Jackson Hewitt tax service provider after termination;

- never observed Richard Barnes offering any tax prep services in any of his old locations after termination; and

- never observed Richard Barnes acting as a supervisor at any of his old locations, or interacting with any employees at his former locations after termination.

---

[2] This case is easily distinguished from *Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.*, No. 03-799 (WHW), 2005 WL 2656676 (D.N.J. Oct. 18, 2005).  First, there is no evidence that the Barnes Defendants continued to operate a tax business under Jackson Hewitt marks after termination, whereas the defendant in *Travelodge* continued to operate a hotel with the Travelodge marks displayed.  Second, here, all of the Jackson Hewitt signs at over fifty locations were down within six months, whereas it took the *Travelodge* defendants over a year to remove signs from one location.  Third, the hotel business, unlike the tax business is not seasonal.  Thus, Travelodge was able to offer concrete evidence of damages incurred by the signs remaining up, whereas Jackson Hewitt has yet to substantiate its damages claim.

*See* Zullo Cert. at Ex. D at 117:5-8; 131:1-133:15 (S. Peters Dep.). This testimony is undisputed.

It is also undisputed that Richard Barnes did not own Customer's First and did not run its operations. *See* Zullo Cert. at Ex. E at 5:21-6:19 (R. Barnes Dep.); Ex. F at 65:6-66:11 (W.S. Barnes Dep.); *see also* Supplemental Certification of Michael S. Zullo at Ex. A at 38:12-23 (C. Davis Dep.) ("Q. You mentioned just a moment ago that a number of people who are employees of Customers First had told you that Scott Barnes and Kristi Barnes were the owners of Customers First; is that accurate? A. Correct. . . . Other than that do you have any other information about the ownership structure of Customers First? A. Absolutely not."). Thus, Jackson Hewitt has failed to provide any evidence of actual use of the marks in commerce by the Barnes Defendants.

Lacking evidence against the Barnes Defendants, Jackson Hewitt attempts to bolster its feeble claim by relying exclusively on evidence against Customers First. For example, Jackson Hewitt states that in November of 2011, Sandi Peters went to one of the Barnes Defendants' former locations that was then being run by Customers First and "overheard" a Customers First employee identify Customers First on the phone as Jackson Hewitt. *See* Opposition at p. 10. However, Ms. Peters does not provide any evidence that Richard Barnes was present during this alleged incident, nor that Richard Barnes had any involvement in this incident.

Similarly, Jackson Hewitt argues that Kelvin Farmer, who testified that he never observed Richard Barnes offering tax services under the Jackson Hewitt marks after termination, observed several unnamed and unidentified people at a Customers First location wearing Jackson Hewitt shirts and claiming that they completed tax returns for

5

customers.  *See* Zullo Cert. at Ex. C at 82:2-19 (K. Famer Dep.); Opposition at p. 10. Mr. Farmer's testimony about purported statements made by unnamed and unidentified employees of a non-party is inadmissible hearsay evidence that is insufficient to summary judgment.  *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").  Second, even assuming that the Court could consider such inadmissible hearsay, Mr. Farmer and Jackson Hewitt fail to connect these unnamed and unidentified employees to Richard Barnes or Barnes Enterprises.

> **B.     Jackson Hewitt Has Failed to Produce Any Evidence of the Likelihood of Customer Confusion.**

Jackson Hewitt's proffered evidence of purported customer confusion consists solely of the inadmissible unsworn hearsay email of Stephanie Bishop, the daughter of Jackson Hewitt franchisee, Cynthia Davis.  *See* Opposition at p. 12.  In her email, Ms. Bishop states that "several" clients told her that they believed Customers First was affiliated with Jackson Hewitt.  *Id*.  But Ms. Bishop only identifies three customers and fails to provide any information as to the identity of any other clients who were allegedly confused, nor when, where or under what circumstances these purported statements were made.  Furthermore, such "evidence" is inadmissible hearsay evidence and cannot be considered by the Court.  In light the vague and uncorroborated nature of Ms. Bishop's statements and the fact that Ms. Bishop has a personal interest in the outcome of this litigation as the daughter of a Jackson Hewitt franchisee, Ms. Bishop's statements cannot simply be accepted at face value.  *See e.g.*, *Primepoint, L.L.C. v. Primepay, Inc.*, 545 F. Supp. 2d 426, 444 (D.N.J. 2008) (evidence of actual confusion viewed with skepticism because sole source of evidence was former employee who could not remember the

6

of the allegedly confused consumers); *Citizens Fin. Group, Inc., v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 122 (3d Cir. 2004) ("actual confusion evidence collected by employees of a party in a trademark action must be viewed with skepticism because it to be biased or self-serving").

While "evidence of actual confusion may be highly probative of the likelihood of confusion, a district court can weigh evidence in favor the alleged infringer where evidence of actual confusion is 'isolated and idiosyncratic.'" *Primepoint*, 545 F. Supp. 2d at 444 (citation omitted); *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 291 (3d Cir. N.J. 2001) ("[g]iven the size of these companies, and the large number of e-mails, customer inquiries, and other communications they receive on a daily basis, these isolated instances of initial interest confusion [over an appreciable period of time] counsel against a finding of likely confusion."); *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 366 (3d Cir. 2007) ("Just as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion. To the contrary, the law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.") (citation omitted).

Here, the limited instances of confusion cited by Ms. Bishop are not of any likelihood of confusion because these incidents were clearly isolated and de minimus in light of the total volume of customers, customer inquiries, telephone calls and emails received by both companies during the course of business. *McNeil Nutritionals*, 511 F.3d at 366 ( "Evidence of only a small number of instances of actual confusion can dismissed as inconsequential or de minimis."); s*ee also*, *Primepoint*, 545 F. Supp. 2d at

7

(holding that four instances of alleged actual confusion were not probative of any likelihood of confusion); *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 227 (3d Cir. Pa. 2000) (upholding finding that evidence of actual confusion was isolated and idiosyncratic where sales agent testified that several professional buyers him about a product sold under defendant's mark and that a receptionist received two inquiries regarding defendant's product).[2]

Moreover, upon proper examination, the incidents in the Bishop email actually show definitively that there was *no* customer confusion. Thus, the fact that Jackson Hewitt is forced to rely on that email and those incidents as evidence of customer confusion shows how utterly lacking Jackson Hewitt's evidence is on this point.

Although Stephanie Bishop was not deposed, her mother, Cynthia Davis, was deposed, and she was questioned at length about the incidents described in the Bishop email. The undisputed testimony of Cynthia Davis clearly demonstrates that none of the customers identified in Ms. Bishop's email believed that Customers First was Jackson Hewitt.

For example, Ms. Davis testified that one of the unnamed clients referenced in Ms. Bishop's email specifically chose Jackson Hewitt over Customers First to prepare her taxes in 2011 because she wanted her taxes done by Jackson Hewitt and not by Customers First:

> Q: Is it your understanding that this unnamed lady who had gone to the Manning Customers First location ultimately didn't file her taxes with Customers First because Customers First could not offer her a refund anticipation loan and that's why she came to your Jackson Hewitt location?
>                                   * * *

---

[2] Even in cases where there are a few consumers who are confused, in order to be actionable, there must be evidence of an appreciable number of confused consumers established by a statistically relevant method such as a trademark survey.

8

> A. No. I think she came because she wanted her taxes done at Jackson Hewitt and not Customers First. It's a well-known name.

*See* Supplemental Certification of Michael S. Zullo at Ex. A at 86:4-17 (C. Davis Dep.). It is beyond question that the customer could not have made such a decision if she was confused about whether Customers First was Jackson Hewitt.

Similarly, Ms. Davis testified that Viola Noel, one of the clients identified in Ms. Bishop's email, understood that Customers First *was not* Jackson Hewitt. *Id*. at 86:18-87:1.

Moreover, Ms. Davis also testified that she visited multiple Customers First locations that did not have any Jackson Hewitt marks displayed and was affirmatively told by the Customers First employees at those locations that the locations *were not* Jackson Hewitt:

> **Cynthia Davis**
>
> A. the Shaw office did not have any signage other than Customers First. I did go in there and the employee did say that - - I said, is this Jackson Hewitt? They said no.
>
> \* \* \*
>
> Q. So customers had gone to the Shaw office, at least from what you could determine, and then realized it wasn't a Jackson Hewitt and then came to your office that you continue to operate today; is that correct?
>
> A. That's correct.
>
> \* \* \*
>
> Q. So you'd gone to Bi-Lo first; is that correct?
>
> A. Correct.
>
> Q. Was that a Customers First Location?
>
> A. Correct.
>
> Q. Was it branded as a Customers First location?
>
> A. Correct.
>
> Q. Did it have any Jackson Hewitt signs?

9

> A. None.
>
> * * *
>
> Q. Now, when you said that this employee of the Customers First at the Bi-Lo started spilling the beans, can you describe specifically what she said at that point?
>
> A. Yes. She said that that's what she was told to tell people. There is not a Jackson Hewitt. They are – they are the new Jackson Hewitt. They were affiliated with it, but there is no Jackson Hewitt. And it's owned by Kristi and Scott Barnes . . .

*See* Supplemental Certification of Michael S. Zullo at Ex. A at 44:8-14; 49: 3-8; 49:9-16; 50:25-51:9; 52:6-15.  Based on the evidence, it is clear that consumers were certainly aware that Customers First was not affiliated with Jackson Hewitt and that they were not engaging Jackson Hewitt's tax preparation services when they visited the Customers First locations.  Accordingly, Jackson Hewitt cannot meet its burden of proof in demonstrating that any likelihood of confusion – much less any actual confusion – existed between Customers First and Jackson Hewitt.

### C. Jackson Hewitt Has Failed to Establish a Basis to Support a Theory of Contributory Infringement.

Having failed to build a direct case against the Barnes Defendants, Jackson now attempts, at summary judgment, to surreptitiously convert its claim for direct trademark infringement into a claim for contributory trademark infringement – despite fact that such a claim has clearly not been pled in this action.  Nor has Plaintiff moved to amend the pleadings to add such a claim.  While the Third Circuit has not addressed this issue, both the Eleventh Circuit and the Tenth Circuit have declined to construe a claim "direct infringement" as being one for "contributory infringement" absent the existence an express reference to "contribution" or "contributory infringement" in the pleadings. *e.g.*, *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1246 Cir. Ga. 2007) ("we will not construe a claim for direct trademark infringement under 15

10

U.S.C. § 1114(1) as being one for contributory trademark infringement"); *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1128-29 (10th Cir. 2003) (holding that the court was "reluctant to adopt [such a] broad definition of notice pleading so as to include a for contributory infringement"). Thus, Jackson Hewitt's claims for "contributory infringement" should be denied.

   Moreover, Jackson Hewitt's reliance on *AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d. Cir. 1994), is misplaced because Jackson Hewitt has failed to produce any evidence that Customers First had an agency relationship with the Barnes Defendants. In *Winback*, the Third Circuit held that a party can be held liable for contributing to trademark infringement under agency principles. *Id*. 42 F.3d at 1433-34. There, the Third Circuit remanded the case for further consideration of whether or not the alleged third-party infringers had an agency relationship with *Winback*. *Id*. Specifically, the Third Circuit held that the district court was required to consider "(1) whether *Winback* [was] liable for its representatives' acts, despite the fact that the representatives are independent contractors and despite the absence of a master-servant relationship; and (2) whether the representatives, even if not agents, were acting with the apparent authority of Winback." *Id*. at 1434.

   Here there is simply no evidence that Customers First, Kristi Barnes, or Scott Barnes were in any way agents of the Barnes Defendants, or acting upon their apparent authority. It is undisputed that the Barnes Defendants did not own or operate Customers First. *See* Zullo Cert. at Ex. E at 5:21-6:19 (R. Barnes Dep.); Ex. F at 65:6-66:11 (W.S. Barnes Dep.); *see also* Supplemental Certification of Michael S. Zullo at Ex. A at 38:12- (C. Davis Dep.). Also, Scott Barnes testified that he stopped working for the Barnes

11

Defendants after Jackson Hewitt terminated the Barnes franchises and then went to work for Customers First where he did not receive any instruction from either of the Barnes Defendants. *See* Supplemental Certification of Michael Zullo at Ex. B at 60:5-61:3; 65:8-20 (W.S. Barnes Dep.). Similarly, Kristi Barnes testified that she stopped working for the Barnes Defendants in 2007. *See* Supplemental Certification of Michael Zullo at C at 18:7-19:16 (K. Barnes Dep.).

Further, there is no evidence to support a finding of apparent authority. On the contrary, Jackson Hewitt cites a clear indication that Scott Barnes was *not* holding out to be an agent of the Barnes Defendants noting that Scott Barnes provided a business card to a third party, Bi-Lo that had Richard's name *crossed out*.[3] *See* Opposition at p. Similarly, Cynthia Davis testified that when she approached Customers First employees at least two separate occasions at different Customers First locations, she was told that Customers First was owned by Kristi Barnes and operated by Scott Barnes, not by Barnes or Barnes Enterprises. *See* Supplemental Certification of Michael S. Zullo at Ex. at 44:8-14; 49: 3-8; 49:9-16; 50:25-51:9; 52:6-15.

Accordingly, Jackson Hewitt has failed to offer evidence of any affiliation, contractual or otherwise, between Customers First or its employees, on the one hand, and the Barnes Defendants, other than the familial relationship between Richard, Scott and Kristi. And Jackson Hewitt has offered no legal authority for the proposition that an agency relationship can be shown based on a family relationship alone (indeed, such a notion would be antithetical to well-established principles reflected throughout common

---

[3] Bi-Lo also circulated an email to its stores noting that Customers First, not Jackson Hewitt, would be operating tax businesses in various Bi-Lo locations. *See* Supplemental Certification of Michael Zullo at Exhibit D.

law jurisprudence regarding the legal distinction between individuals.) Thus, this is clearly distinguishable from the situation in *Winback*, where the evidence indicated that the makers of the allegedly confusing statements were contractually affiliated with the defendant.

### III. CONCLUSION

For the foregoing reasons, defendants Richard Barnes and Barnes Enterprises, Inc. respectfully request that this Court grant the Barnes Defendants' Motion for Partial Summary Judgment as to Counts I-VI.

Respectfully submitted,

Dated: January 15, 2013

By: */s/Michael S. Zullo*
Michael S. Zullo, Esq.
J. Manly Parks, Esq.
Eric Breslin, Esq.
**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
One Riverfront Plaza
1037 Raymond Boulevard
Suite 1800
Newark, NJ 07102-5429
*Attorneys for Defendants Barnes Enterprises, Inc. & Richard S. Barnes*