NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKSON HEWITT, INC.       : | |
|      : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff,      : | |
|      : | **OPINION** |
| v.      : | |
|      : | No. 10-cv-05108 (DMC)(JAD) |
| BARNES ENTERPRISES, INC., et al;      : | |
|      : | |
|      : | |
| Defendants.      : | |
|      : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon a Motion for Summary Judgment by Jackson Hewitt Inc. ("Plaintiff") against Barnes Enterprises, Inc. and Richard S. Barnes ("Defendants") as to Count VIII, Count IX, and Count XII (ECF No. 340-1, Dec. 14, 2012) and upon Defendants' motion for partial summary judgment as to Counts I-VI of the verified complaint. (ECF 341-1, Dec. 17, 2012) For the reasons stated below, Plaintiff's motion for summary judgment is **granted in part** while Defendants' cross- motion for partial summary judgment is **denied**.

## I. **BACKGROUND**[1]

Plaintiff is in the business of granting franchises to individuals and entities to operate income tax preparation businesses under the Jackson Hewitt name and brand including allowing the individuals or entities to use Jackson Hewitt signage and marks. Plaintiff entered into nine

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective briefs.

identical Franchise Agreements with Defendants for the operation of Jackson Hewitt franchises in South Carolina. Richard Barnes, the franchisee and head of Barnes Enterprises, signed each of the Franchise Agreements on behalf of Barnes Enterprises. Furthermore, Richard Barnes personally guaranteed Barnes Enterprises' performance and obligations under each of the Franchise Agreements through guaranties. Pursuant to the Franchise Agreements, Defendants agreed to pay interest to Jackson Hewitt at the rate of 18 % per year or at the highest legal rate of interest permitted by law, whichever was less, on any amounts owed to Plaintiff that were more than five days overdue.

On July 14, 2010, Plaintiff informed Defendants that they were in default of the Franchise Agreements and Notes. Defendants failed to rectify the default and on August 9, 2010, Plaintiff terminated the Franchise Agreements. The termination notice demanded that Defendants pay Plaintiff all past due royalty and advertising fees, rents, outstanding billed promissory notes, and remaining unbilled promissory notes.

Following notice of the termination of the Franchise Agreements, Plaintiff claims that Defendants persisted to utilize the Jackson Hewitt trademarks, including failing to remove signage from former Jackson Hewitt locations. Plaintiff alleges that this active failure caused customer confusion. In response, Defendants allege that these instances of trademark infringement do not concern Defendants, but instead concern Accounting Pros LLC d/b/a Customers First ("Customers First"). Customers First is a business owned by Richard Barnes's wife, Kristi Barnes. Kristi Barnes, in conjunction with Richard Barnes's father, Scott Barnes, offered individual income tax preparation services during January and February of 2011 within some of the previous Jackson Hewitt locations owned and operated by Defendants. Defendants argue that the trademark claims cannot survive summary judgment because Customers First,

Kristi Barnes, and Scott Barnes are not parties to this action and have not been sued by Jackson Hewitt in any forum.

Plaintiff filed the Complaint on October 4, 2010. (ECF No. 1, Oct. 4, 2010). This Court entered an Order on January 18, 2011 granting Plaintiff's request for a preliminary injunction against Defendants. (ECF No. 70, Jan. 18, 2011). Subsequently, Plaintiff has moved for summary judgment as to Count VIII (Breach of Contract - Unpaid Fees), Count IX (Breach of Contract - Breach of Notes), and Count XII (Breach of Guaranties - Richard Barnes) of it Complaint. Defendants also have cross-moved for partial summary judgment as to Counts I-VI of the verified complaint. (ECF No. 341, Dec. 17, 2012).


## II.  **STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56, summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [the record][ which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." Red Roof Franchising, LLC v. AA Hospitality Northshore, LLC, 2012 WL 2522964 at

*4 (D.N.J. June 28, 2012) (citing <u>Anderson</u> 477 U.S. at 256-57). To do so, "[a] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." <u>Id.</u> (citing <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001)). Accordingly, "[where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). If the terms of a contract are unambiguous, a court may construe the meaning or requirements of a contract as a matter of law for purposes of summary judgment. <u>W.B. V. Matula</u>, 67 F.3d 484, 497 (3d Cir. 1995).

### III. <u>DISCUSSION</u>

The Court must discuss both Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment. In regards to Plaintiff's motion for summary judgment, Defendants do not challenge that there exists a genuine dispute as to any material fact. However, Defendants argue that Plaintiffs employ an improper interest rate of 18% as opposed to 3.5% to calculate the amount owed in default. Defendants further argue that the calculation of attorney's fees is premature because Defendants could possibly succeed on their motion for summary judgment. The Court disagrees with Defendants in connection with the applicable interest rate and the Court will apply the agreed upon interest rate; however, the Court agrees with Defendants that the calculation of attorney's fees should be postponed until the conclusion of the matter.

In regards to Defendants' cross-motion for summary judgment, Defendants argue that they are entitled to summary judgment because there is no genuine dispute as to any material of fact; however, Plaintiff has demonstrated there exists a genuine dispute as to a material fact in

4

each of the Defendants contentions. Therefore, the Defendants' motion for summary judgment cannot rest on its merits and must be denied.

## A. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As mentioned, Defendants do not challenge the substantive issues of Plaintiff's motion for summary judgment. Instead, Defendants only raise the issues of applicable interest rate and the calculation of attorney's fees.

### 1) The correct interest rate to be applied to amount owed in default is 18% as opposed to 3.5%.

The correct interest rate to be applied to the amount owed by Defendants in default of their payments pursuant to their franchise agreements with Plaintiff is 18% as opposed to 3.5%. When a contract specifies an interest rate to be used in connection with amount due and owing, that rate is to be applied. Red House Capital LLC v. Nirvana Pool & Spa LLC, NO. 09-56128, 2012 WL 253128 (D.N.J. Jan. 25, 2012) (citing Ramada Worldwide Inc. v. Shriji Krupa, LLC, No. 07-2726, 2009 WL 1490577, *5 n. 6 (D.N.J. May 27, 2009)). Pursuant to the original Franchise Agreements, Plaintiff and Defendants agreed upon an interest rate of 18% or at the highest rate permitted by law in regards to any amount owed in default to Plaintiffs. In response, Defendants argue that a 3.5% interest rate, governed by New Jersey Court Rule 4:42-11(a), should be applied to the amount in default. Defendants fail to acknowledge that pursuant to their franchise agreements with Plaintiff they agreed to the interest rate of 18%. As Red House Capital demonstrates, a contractual agreed upon interest rate in regards to an amount owed should be upheld. Therefore, the correct interest rate to be applied to the amounts owed by Defendants to Plaintiff is 18% not 3.5%.

### 2) The calculation of attorney's fees should be postponed until the conclusion of the present matter.

The calculation and awarding of attorney's fees must be proportional to the overall award. Litton Industries Inc. v. IMO Industries Inc., 982 A.2d 420 (N.J. 2009). Defendants argue that the calculation of attorneys' fees should be postponed because of the possibility that Defendants prevail on their motion for summary judgment. While the Court denies Defendants' motion for summary, it is still appropriate for the calculation of attorneys' fees to be postponed until the conclusion of the matter so that the Court will be better able to gauge the proportionality of the attorneys' fees.

## B. DEFENDANTS MOTION FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment hinges on the argument that Customers First, not Barnes Enterprises or Richard Barnes, committed the alleged trademark infringement and subsequently that Defendants are not the appropriate party in this action and are exculpated from any wrongdoing. However, even if Customers First was the primary trademark infringer, Defendants can be held liable as secondary infringers. Notwithstanding the identity of the appropriate party, there exists a genuine dispute as to a material fact as to each portion of Defendants' motion for summary judgment. Therefore, the Court must deny Defendants motion for summary judgment.

### 1) Defendants are potentially liable for the trademark violations as secondary infringers.

Despite the repeated argument that Customers First is the sole appropriate party in the current action, there is a genuine dispute as to whether Defendants are liable for the trademark violations as secondary infringers. The Third Circuit has held that a manufacturer or distributor can be liable as secondary infringers if that manufacturer or distributor "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." AT & T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1432 (3d Cir. 1994) (quoting

Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982)). Applying the standard set forth by the Third Circuit in AT& T Co., Defendants failure to remove signage from the previous Jackson Hewitt franchise locations compounded by Defendants actual knowledge that consumer confusion could exist while Customers First operated its accounting firm demonstrates that there is a genuine issue for trial as to whether Defendants are secondary infringers. Defendants acknowledge that any trademark infringement occurred through Customers First actions and demand that this present action be resolved in Defendants' favor because they are not the appropriate party. This acknowledgement of trademark infringement on behalf of Customers First demonstrates that there is a genuine issue for trial as to whether Defendants are liable as secondary infringers.

2) **Notwithstanding Defendants' potential liability as secondary infringers, there exists a genuine issue of material fact as to each of Defendants' counts in their motion for summary judgment.**

Despite being potentially liable as secondary infringers, there exists a genuine dispute as to a material fact as to each count that Defendants argue in their motion for partial summary judgment. Therefore, it is premature for the Court to decide each of these counts.

i. **There exists a material fact as to whether there is evidence that Defendants used Jackson Hewitt marks after termination of the Barnes Jackson Hewitt Franchises.**

There exists a material fact as to whether there is evidence that Defendants used Jackson Hewitt marks following the termination of the franchise relationship between Plaintiff and Defendants. Defendants argue that Plaintiff has not produced any evidence that Defendants actively utilized Jackson Hewitt mark following the termination of the franchise agreements. However, Plaintiff argues that there does not be an active use to constitute trademark infringement and that Defendants' failure to remove the signs constitutes trademark

infringement. The Court is not convinced this is an appropriate time to make such a fact determination.

ii.     **There does exist a genuine dispute as to whether Plaintiff suffered any damages from Defendants' use of its marks**

There does exist a genuine dispute as to a material fact as to whether Plaintiff suffered any damages from Defendants alleged continued use of Plaintiff's marks following the termination of the Franchise Agreements. In their motion for summary judgment, Defendants argue that Plaintiff has not produced any evidence that it suffered damages as a result of any alleged use of the marks. However, Plaintiff argues that Defendants have failed to provide them with any accounting records that highlight any measures of revenue; therefore, Plaintiff cannot fully calculate the amount of damages suffered as a result of the infringement. Plaintiff also alleges that Barnes admitted to preparing tax returns for former Jackson Hewitt customers when he worked for Customers First. In the absence of financial records and in light of Barnes's statement, there exists a genuine dispute as to a material fact as to whether Plaintiff suffered any damages from Defendants continued use of its marks following the termination of the franchise agreements. It would be premature for the Court to grant summary judgment in favor of Defendants.

iii.    **There exists a genuine dispute as to whether Defendants attempted to adopt Plaintiff's marks or that customer confusion resulted from any delay in removing Jackson Hewitt signage.**

The Court need not discuss whether Defendants attempted to adopt Plaintiff's marks because, as stated above, there is ample support that Plaintiff's marks were still utilized following the termination of the franchise agreements. The Court now turns to the question of whether there is a genuine dispute as to whether customer confusion resulted from any delay in removing the Jackson Hewitt signage. Defendants argue that Plaintiff has failed to produce any

testimony from any purchaser who was actually confused by the signage. However, Plaintiff argues that "proof of actual confusion is not necessary; likelihood of confusion is all that need to be shown. <u>Fisons Horticulture, Inc. v. Vigoro Indus., Inc.</u>, 30 F.3d 466, 472 (3d Cir. 1994). Whether there was customer confusion is at the center of this particular dispute and is clearly a question of fact. Therefore, it would be premature for the Court to decide this issue at this time.

### iv. There is a genuine dispute as to whether Plaintiff suffered trademark dilution.

There exists a genuine dispute as to whether Plaintiff suffered trademark dilution as a result of the infringement following the termination of the franchise agreements. Defendants rely on their argument that Plaintiff did not suffer any damages; therefore, there can be no trademark dilution. However, as mentioned above, there is exists a dispute as to a material fact whether Plaintiff suffered any damages. It would be premature for the Court to dismiss this dilution claim in light of the dispute over whether Plaintiff suffered damages.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for summary judgment is **granted** and Defendant's cross-motion for partial summary judgment is **denied.**

Dennis M. Cavanaugh, U.S.D.J.

Date: _____, 2013
Original: Clerk's Office
Cc: All Counsel of Record
File

9